NEW YORK COUNTY.—HON. D. C. CALVIN, SURROGATE.—
June, 1879.

## McCoy *v.* McCoy.

*In the matter of the probate of the last will and testa-
ment of* JOHN McCoy, *deceased.*

Neither an unjust will, nor the existence of the motive and opportunity
for undue influence, will, in the absence of affirmative evidence of its
exercise, warrant the presumption of such undue influence, where the
testator's mind is unimpaired, and he had the opportunity to and did
understand the provisions of his will.

The testator, an aged man, but of clear mind and firm will, bequeathed the
bulk of his property to his daughter, who resided with him, aided him in
his business, and nursed him during his last illness. He had previously
made a will, dividing his property equally among his children. The
testator had separated from his wife, and all the children accompanied
the mother. Upon the death of his wife, testator became reconciled
with his daughter. With his other children, all sons, he had very
little intercourse. One of the sons left for the West, another made a
personal assault upon the testator, and the third was unfortunate in
business, irregular in his social habits, and had received financial
assistance from his father in business. The will was drawn by a re-
spectable attorney, upon the sole request of testator, and in the ab-
sence of the daughter.—*Held,* that there was no proof of undue influ-
ence.

Hazard *v.* Hanford, 2 *Hun,* 45, criticised.

THE will propounded bore date the 23d of August,
1877, and was witnessed by John H. Welsh, William E.
Corey and James E. Carpenter, and after the payment
of debts and funeral expenses, bequeathed $200 to John
B. McCoy, and $200 to Andrew McCoy, and $100 to
Thomas McCoy, devised and bequeathed the residue of
his estate to his daughter Mary Ann, and directed that
no charge be made for money advanced to her, or to the
legatees above named, who were his sons, and appointed
Mary Ann and John Cartres the executrix and executor.

John B. McCoy, a son, filed objections, in substance that the will was not executed according to law, was procured by undue influence, and that the decedent was of unsound mind.

No question was raised respecting the due execution of the instrument. The facts appear sufficiently in the opinion.

A. W. LOWERRE *and* THOMAS M. NORTH, *for proponent.*

HOMER A. NELSON, *for contestant.*

THE SURROGATE.—There appears to be no reasonable doubt that the decedent was, at the time of the execution of the will propounded, of sound and disposing mind. Indeed, there is no evidence calculated to throw any doubt upon that question, nor any, in my opinion, which establishes any impairment of his mental faculties. The only question, therefore, left for determination, is whether the instrument was the result of his free and uncontrolled purpose, or the product of the will and purpose of his daughter Mary Ann, who is the principal beneficiary.

The facts upon which it is claimed that undue influence is established, are, first, that in 1872 the decedent executed a will, which more equally divided his property between his children, giving to his daughter, however, the larger share. Next, the fact that his daughter was intimately associated with him, and had general control of his business affairs ; that she attended to him in his last sickness, and that she sought to prejudice her father against his sons, and to exclude them from his presence in his last illness. The effect of these circumstances must be considered with reference to the history of the

family, and the apparent relations of his sons to the decedent, and the motives likely to influence him in favor of his daughter and against his sons.. It appears that by an unfortunate disagreement, there was a total alienation between the decedent and his wife and all his children, resulting in a formal agreement of separation, and that his hostility to the children resulted principally from their adherence to the mother in the family quarrel. It also appears that after the death of the mother, there was a permanent reconciliation between the decedent and his daughter, resulting in her return to him, and her general care and supervision of his business in his declining years, but that, in respect to his sons, there had been scarcely any intercourse between them ; that one was a wayward boy who went West, and finally became afflicted with paralysis ; that another was of intemperate and irregular habits, and because of personal violence upon his father, was sent to the Island as a culprit. The contestant appears to have been somewhat unfortunate in business, irregular in his social habits, and to have been the recipient, on an occasion when he was pecuniarily embarrassed, of a considerable sum of money from his father. It seems to be well attested by several witnesses, that the decedent retained no fond recollections of his sons, but expressed gratitude and warm appreciation of the helpful services and kind attentions of his daughter, though there is some evidence tending to show that he at times exhibited an unwillingness to have her know of the visit of his relatives, and a feeling that she was not sufficiently attentive to them. It also satisfactorily appears that the will in question was drawn by an

intelligent lawyer, on the sole dictation of the decedent, in the absence of the daughter.

The case is barren of any proof of actual influence, exerted by the daughter upon the decedent, in respect to the will or its provisions. The question to be determined therefore, is whether, in the absence of any such proof, the circumstances to which reference has been made are sufficient to raise the presumption of undue influence, and whether that presumption has been overcome by other competent testimony and surrounding circumstances. Considering the circumstances of this case, it can hardly be said that the instrument in question is what is denominated in law an undutiful will, for there are very rational reasons why the decedent should feel under special obligations to his daughter, and take a lively interest in her future welfare. As she seems to have been quite largely instrumental in aiding him to accumulate and preserve his property, it can hardly be claimed that the discrimination was without a just appreciation of his duty to his other children.

In Seguine v. Seguine (3 *Keyes*, 363), it is held that the doctrine of an inofficious testament has no place in our law, and that if the testator has full testamentary capacity, and is under no undue influence, he may dispose of his property by will as he pleases, however absurd or unjust the disposition may be. In Deas v. Wandell (1 *Hun*, 120 ; S. C., 3 *Supr. Ct.*, 128), it was decided that the mere fact that a will gives all property to persons not related to the testator, does not raise an inference of want of mental capacity, or of undue influence. In Cudney v. Cudney (68 *N. Y.*, 148), it is held, after careful consideration, that to invalidate

a will on the ground of undue influence, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that the party benefited by a will had the motive and the opportunity to exert such influence. There must be evidence that he did exert it. In Gardner *v.* Gardner (34 *N. Y.*, 155), it was held that undue influence must not be such as arises from influences of gratitude, affection, or esteem, but the control of another will than the testator's, while the faculties of the testator are so impaired as to submit to the control, so that he ceases to be a free agent; and in Seguine *v.* Seguine, above cited, it was held that undue influence must be an influence exercised by coercion, imposition or fraud, and its exertion upon the very act must be proved. (See also McMahon *v.* Ryan, 20 *Pa.*, 329; McLaughlin *v.* McDevitt, 63 *N. Y.*, 213; 1 *Redf. on Wills*, 525; Tyler *v.* Gardner, 35 *N. Y.*, 559.)

In Hazard *v.* Hefford (2 *Hun*, 445), Mr. Justice GILBERT says, at page 446 : "Evidence that the testatrix had been influenced in making the will, would lead to no legal result. Such an inquiry would lead to an investigation of the motives and the reasons operating on the mind of the testatrix, and to confusion and doubt. It is, therefore, a wise and salutary rule that requires proof of actual coercion and fraud." If the learned judge intended to say, that, in order to establish undue influence sufficient to overturn a will made under such influence, actual coercion or fraud must be proved, I am of the opinion that he states the doctrine altogether too broadly, and I think that Judge REDFIELD, in his American Cases upon the Law of Wills, p. 472, in a note,

defines the doctrine much more rationally and confor-
mably to the adjudged cases. He says: "We may
safely say that where an unjust will is produced by
deception and fraud it cannot be upheld. So, too,
where such a will is the offspring of any influence
brought to bear upon the testator in any manner, so as
to overcome his free agency, it cannot be sanctioned by
law, it matters not whether the influence be force or
fear, or importunity, destroying peace of mind. It is
often said in the cases that influence resulting from love,
duty and affection will not be regarded as unlawful,
but we have never known a case where even this kind of
influence was carried to the extent of producing an un-
just will, more through the agency of the principal
beneficiary than of the testator, that it could be upheld
in a court of justice."

In Fagan v. Dugan (2 *Redf.*, 341), I had occasion to
consider at length this question, and at page 348 I
took occasion to say that I did not understand, that, to
prove that the undue influence was present at the par-
ticular time, it was necessary to show that the duress
was visible or physically exercised at the moment of the
execution, but that there must be such evidence as
would satisfy the mind of the court or jury, that the
duress existed shortly before, and continued its domina-
tion over the mind of the testatrix at the time of execu-
tion; that fraudulent results are usually attained by
slow, adroit and covert processes, manifested by numer-
ous acts, each of which is trifling in itself, but which,
when combined, are potential and controlling. It is also
true, as so well expressed by Judge EARL in Rollwagen v.
Rollwagen (63 *N. Y.*, 504, at page 519), that it is im-

possible to define or describe with precision and exactness what is undue influence, what the quality and the extent of the power of one mind over another must be, to make it undue in the sense of the law, when exerted in making a will.

But the influence exercised over a testator, which the law regards as undue or illegal, must be such as to destroy his free agency, and that, according to Jarman, the amount of undue influence which will be sufficient to invalidate a will must, of course, vary with the strength or weakness of the mind of the testator, and the influence which would subdue and control a mind naturally weak, or one which had become impaired by age, sickness, disease or intemperance, or any other cause, might have no effect to overcome or mislead a mind naturally strong and unimpaired.

The principle which I deduce from these authorities is that neither an unjust will, nor the mere existence of the opportunity and motive for undue influence, without any affirmative evidence of its exercise, will warrant the presumption of such undue influence in a case where the testator's mind is unimpaired, and where it clearly appears that he had the opportunity to, and did, understand the provisions of his will. Much less when the so-called partial disposition is so well accounted for as in this case, by the decedent's friendly relations with his daughter, her just claims upon his partiality and the well-authenticated fact of the absence and at least partial alienation of his sons, constituting the remainder of his family : especially, in the face of the proof that decedent was of firm and independent will and purpose, and it affirmatively appearing that as to the preparation and

instructions and the terms of the instrument, and its actual execution, the principal beneficiary took no part.

From the best consideration which I have been able to give the testimony in this case, and the law applicable thereto, I am of opinion that the instrument propounded was duly executed according to the requirements of our statute by the decedent, when he was of sound and disposing mind and free from undue influence, and that the will should be admitted to probate. I am, however, of the opinion that the circumstances of the case are sufficient to establish the good faith of the contest, and that an allowance in lieu of costs should be made to the counsel for the contestants as well as to the counsel for the proponent, and that a full allowance of five per cent. on the amount of the estate would be a reasonable allowance herein.

Ordered accordingly.