## SARAH BIGLOW ET AL., APPELLANTS, *v.* J. R. LEABO AND CHARLOTTE LEABO, RESPONDENTS.

UNDUE INFLUENCE MUST BE CLEARLY SHOWN TO SET CONVEYANCE ASIDE. —In order to warrant a court of equity in setting aside a deed alleged to have been executed under undue influence, exercised by the grantee over the grantor, the evidence must clearly establish that such influence was exerted, and that the deed was executed by reason of such influence, and would not have been executed had not the influence been exerted, and that the deed was not the free act of the grantor.

APPEAL from Yamhill County.

This is a suit by the appellants to set aside a conveyance executed by one John G. Parrish, on March 14, 1876, to the respondents. The complaint, in substance, alleges "that John G. Parrish died in Yamhill county, state of Oregon, on the tenth day of November, A. D. 1876, and left surviving him, as heirs at law, the above-named appellants—Sarah Biglow, Margrette E. Chrisman, Wm. H. Parrish, and Ella Wisecarver; that on the fourteenth day of March, 1876, and long prior thereto, the said John G. Parrish was the owner of a certain tract of land containing one hundred and sixty-nine and twenty-five hundredths acres, situated in Yamhill county, state of Oregon; that he was, on the fourteenth day of March, 1876, and long prior thereto, old and infirm, and wholly incapacitated from attending to any business, by reason of his being of weak mind; that the defendants on said day, fraudulently taking advantage of his inability and imbecility of mind, did overpersuade him to make, sign, and deliver to them the deed to said land, without any consideration therefor, and in fraud of the rights of plaintiffs, who are children of the deceased John G. Parrish."

The respondents deny the allegations of incompetency in Parrish, and of undue influence. For a separate defense, they allege, in substance, that on the twenty-sixth day of January, 1876, Parrish came to reside with the respondents, and to make his home with them, and continued to so reside with them till the date of the execution of said deed

by him, and thereafter until his death; that during this time he was old and infirm in health, and not·able to take care of himself, or do any work, and that they, at his request, boarded him and furnished him a home, and took care of him, and paid out for him money for medicines and medical treatment and necessaries of life; that on the said fourteenth day of March, 1876, Parrish and the respondents entered into a contract whereby they agreed to keep, board, lodge, maintain, and care for Parrish the remainder of his life; and Parrish agreed, in consideration of said board, lodging, etc., to convey to the respondents the land described in the complaint, and they were to execute to Parrish a life lease upon said land for the purpose of further securing to him the performance of said agreement and the conditions of the deed, and that said deed was executed and delivered in pursuance of said agreement, and that the agreement was fully complied with on their part; that since the execution of the deed they have made valuable and permanent improvements on said land to the value of eight hundred dollars, and that the appellant, Wm. Parrish, son of said John G., abused and ill-treated his father, said John G. Parrish, and that by reason thereof he was compelled to leave his house and go and reside with the respondents.

Upon the testimony taken in the suit, the court below dismissed the complaint at the appellants' costs.

*Bradshaw & Moreland and Bonham & Ramsey,* for appellants:

Where imbecility of mind and inadequacy of consideration coexist, courts of equity presume that the transaction was fraudulent without other proof. (Willard's Eq. Jur. 203–4; 4 Or. 291.) The defendants, having induced J. G. Parrish to leave his home and put himself under their care and "protection," he being infirm in mind and unable to take care of himself, became his *quasi* guardians, and courts of equity will presume that the deed made during the existence of this confidential relation was obtained by fraud and undue influence, and annul it. (Bigelow on Fraud, 281, 285; Kerr on Fraud, 182; *Cadwalder*

v. *West*, 48 Mo. 483; *Whelan* v. *Whelan*, 3 Cow. 587; 21 Md. 338; 6 N. Y. 568; 1 Barbour, 408; 31 Id. 9; *Gilmore* v. *Burch*, 7 Or. 374; *Greenwood* v. *Cline*, 7 Or. 17; *Huguenin* v. *Baseley*, 2 L. C. in E., part 2, 1184, 1185, 1206, and notes.)

*H. & A. M. Hurley and McCain & Fenton*, for the respondents:

Mere weakness of mind, if the man be legally *compos mentis*, is no defense to an action founded on the contract, or other acts of such party. (Willard's Eq. 201; 25 N. Y. 70, 71; 8 Id. 358; 68 Id. 148; Dean's Med. Juris. 556; 3 Leading Cases in Equity, 136; 16 Am. Dec. 473, 651, 652; 4 Id. 336.) Weak minds differ from strong ones only in the extent and power of their faculties; but unless they betray a total loss of understanding, or idiocy or delusion, they can not properly be considered unsound. (Willard's Eq. 201; 25 N. Y. 68.)

A deed, will, or other instrument, will not be set aside on the ground of imbecility, if the party knew perfectly well what he was doing. (Dean's Med. Juris. 564; 3 Leading Cases in Equity, 112.) To establish undue influence it must appear that the opportunity or influence was such as to deprive the testator or grantor of the free exercise of his will, and that it was exerted. (34 N. Y. 155; 68 Id. 152; 66 Id. 145; 70 Id. 394.) Evidence of non-professional witnesses must be based upon acts and declarations. (34 N. Y. 194; Civ. Code, 250, sec. 696.) There must have been undue influence, and there must be evidence that it was exerted. (77 Ill. 397; 68 N. Y. 148; 76 Pa. St. 106.)

The rule of evidence is different where a fiduciary relation exists. In such case—perhaps where consideration is inadequate and parties are greatly unequal in mind by reason of old age or other circumstances—the law might presume undue influence or incapacity, and the *onus probandi* might be on the beneficiary to show the want of undue influence. Where, however, the fiduciary relation does not exist, and where the consideration is adequate and the parties competent to contract, the burden of proof is on the contestants, and the undue influence must clearly appear. (2 Selden,

268; 66 Pa. St. 292; 2 Johns. Ch. 22; 1 Redfield, 535, sec. 38, n. 22, 34; 1 Story's Eq. sec. 238.)

By the Court, BOISE, J.:

This being a proceeding seeking to set aside a deed, alleging as a reason that the grantor (who was the father of the plaintiffs) was, at the time he executed the deed, old and of weak mind, and that he was overpersuaded and made the deed under undue influence exerted over him by the defendants, it will be necessary, in order to arrive at a just understanding of the merits of the transaction, to look into the history of the case. It appears from the testimony, that J. G. Parrish, deceased, the grantor in this deed, some fourteen years before the execution of the deed, had some difficulty with his wife, with whom he had lived many years, and who is the mother of the appellants, and was divorced from her; that some time after the divorce, he went to live with his son, W. H. Parrish, with whom his divorced wife was living; that he gave to his son William, a farm, and agreed to reside with him as long as he lived. He became dissatisfied with the treatment he received with his son and divorced wife, and sought to find some one to go on the farm now in controversy, in order that he might make a home there. After trying several persons, he got the repondents to go on the farm, and he soon went there. This was in January, 1874. He lived with them until he died, on November 10, 1876. This deed was executed March 14, 1876. It is claimed by the respondents that before they went on this farm, J. G. Parrish, the grantor, agreed to give them the farm for taking care of him during life, and that this deed was executed in fulfillment of this agreement. The proposition is disputed by the appellants, and there is some conflict of testimony on this subject. The question as to the time when the contract to make the deed was concluded, is left in some doubt; but this issue is not very material in the case, and can have no other significance in enabling us to come to a correct conclusion on the merits of this controversy than this: If it was fully established that the bargain was fully entered into in 1874, it would appear that the

grantor had long contemplated making the deed, and that the act was more fully considered than if entered into at the time when the deed was executed.

In order to set this deed aside for undue influence, it must be shown by the appellants that the grantor's mind was weak, and that undue influence was exerted over him, and that it was the undue influence which caused him to execute the deed, so that it was not his free act. (68 N. Y. 148; 76 Pa. St. 106; 77 Ill. 397.) It appears in this case that there was a sufficient inducement for making the deed resulting from the desire of the grantor to remove himself from a home which had become disagreeable to him. This was a valuable consideration, and the evidence clearly establishes the fact that he did desire to remove from the house of his son. The evidence as to the state of his mind at the time he executed the deed is conflicting. The weight of the testimony is in favor of the proposition that he was capable of fully understanding the transaction, and the effect of the deed and of the life lease which he took to secure his maintenance. Mr. Corey, the magistrate who drew the deed and life lease, is probably the most intelligent witness to that transaction, and had the best opportunity to observe his capacity. He testifies that the grantor was competent. We think the weight of the testimony is in favor of the proposition that he was competent, and that he executed the deed of his own free will.

Many witnesses testify to the declarations of the grantor, to the effect that he was dissatisfied with his treatment at his son's house, and that he was satisfied with the treatment at Leabo's. The number of witnesses who testify to the fact that he was competent to contract at the time he made the deed is much greater than those who express a contrary opinion, and they are equally as intelligible and creditable. The evidence all taken together does not establish the proposition that the deed was executed either without consideration or under undue influence.

The decree of the circuit court will be affirmed with costs.