BROWN and wife *vs.* TORREY, executor &c.

To avoid a will, on the ground of the mental disability of the testator, it is not enough that the testator may at some former period have been laboring under some disability; but the question is, had he the capacity to make a will at the time of the execution of the instrument.

Until the contrary appears, sanity is to be presumed: and where an act is sought to be avoided on the ground of mental disabilty, the burden of proof is on the party who alleges the disability.

A testator who died in 1853, aged 78 years, had for some years previous to the execution of his will, in 1843, been subject to occasional fits of epilepsy, which, for the time being, produced great physical prostration, and for a season enfeebled his mental energies, and impaired his power of memory. For many years he had been in the habit of taking large doses of laudanum, to relieve his sufferings. At times he was childish, and incapable of much effort of any kind, and failed, on a few occasions, to recognize his intimate acquaintances. On the other hand it was shown by several witnesses, that he gave directions in regard to his affairs, made bargains, and transacted business, and was consulted by his neighbors for the last 8 or 10 years of his life, and down to within a year or two of his death, and was esteemed a man of sound judgment and good business capacity. And it was shown by the testimony of the attorney who drew the will and the first codicil, and was present when they were executed, and by the person who drew the last two codicils and witnessed their execution, in 1847 and 1849, that on all those occasions the testator was apparently in the perfect possession of his faculties, and fully apprehended the nature of the business he was transacting, and avowed distinctly that the testamentary dispositions he then made were in precise accordance with his views and intentions. *Held* that the testator had sufficient mental capacity to dispose of his property by will; and the decree of the surrogate, admitting the will and codicils to probate, was affirmed.

APPEAL from a decree of the surrogate of the county of Onondaga, establishing the will of Dan Torrey, deceased, and the codicils thereto, and admitting the same to probate. The wife of the appellant, Lucius C. Brown, was one of the heirs at law of the testator, and the respondent, Harvey W. Torrey, was the executor named in the will.

*D. D. Hillis,* for the appellants.

*Gardner & Burdick,* for the respondent.

*By the Court,* BACON, J.   This is an appeal from a decree of the surrogate of the county of Onondaga, admitting to probate the will and codicils of Dan Torrey, deceased.   The original will was executed on the 9th of February, 1843, the first codicil in June, 1847, the second in September of the same year, and the third and last codicil in December, 1849, and the testator died in July, 1853, having attained the advanced age of 78 years.   It was insisted by the contestants before the surrogate, and is argued on this appeal, that Dan Torrey was incompetent from mental imbecility to make the will, or either of the codicils, or if not wholly incompetent, yet that he was so far demented as to be unduly influenced, and was placed under such restraint by those who were most largely the subjects of his testamentary bounty, as to render the will and all the codicils, utterly invalid.

There has been a prior controversy between the defendants in this case and one of the heirs of Dan Torrey, in which the validity of a deed of Dan Torrey, executed cotemporaneously with the will of 1843, was drawn in question on the same grounds as those which are urged to set aside the will and subsequent codicils.   Upon the evidence then given, which was substantially and in its essential features, the same as that introduced before the surrogate, the presiding justice held that there was not enough to authorize the plaintiffs to go to the jury on the questions of incompetency or undue influence, and on appeal, the judgment of the circuit was affirmed at the general term.   Much that was said by the court in the opinion given on that occasion is quite applicable to the case as now presented on this appeal.

On the point of what is claimed as undue influence, and the advantage taken of the old man's condition to extort from him a disposition of his property, which was supposed to be unjust and unequal, there is less evidence given in this case than in the one formerly before the court.   The principal beneficiaries under the will and codicils were the two sons, who had spent, as it seems, their lives thus far in aiding their parents to cultivate the farm and manage the business of the estate, and they

were naturally desirous of bettering their condition by some provision to secure their prospects in the future, if not a remuneration for their past services. Their suggestions as to leaving home to seek their fortunes in the west, doubtless operated to some extent on the testator's mind, to induce him to perform what he had frequently indicated his intention of doing. Although many suspicions were excited in the minds of the other relatives who had hoped ultimately to share in the inheritance, the case is very barren of facts which tend to show that such constraint was exercised upon the old man's freedom of will, as to compel on his part a tame surrender to arts and appliances which he had no power to resist, nor means to overcome. He appeared to have acted on very full consultation with his legal adviser and those around him, and to have executed his purposes with abundant forecast and ample deliberation. On this branch of the case there is nothing that tends to raise a plausible case on which it can be claimed that the will or codicils should be set aside.

The question then remains, whether the plaintiffs succeeded in showing such a want of capacity as to call upon the surrogate to refuse to admit the will and codicils to probate. The evidence accumulated upon this point, is doubtless calculated, at first sight, to make some impression, but carefully considered in the light of the rules that have been laid down as controlling such cases, possesses much less than its apparent force. The substance of the evidence is, that the testator had for some years been subject to occasional fits of epilepsy, which for the time being produced great physical prostration, and for a season doubtless enfeebled his mental energies, and impaired his power of memory. For many years he had been in the habit of taking large doses of laudanum to relieve his sufferings, which in an ordinary case might seem almost sufficient to prostrate both mind and body, and even to peril life. But he had strong recuperative powers, and had acquired, by long habits of indulgence, the capacity to resist the poisonous quality of the article in which he so freely indulged, and even, perhaps, to be temporarily sustained by it ; like the ancient mon-

arch of whom it is written, that he fed upon poisons until they were not only innoxious, but seemed to impart even the quality of nutriment. At times the testator was childish and incapable of much effort of any kind, and failed, on a few occasions, to recognize those around him with whom he had long been familiar.

On the other hand, it is shown by several witnesses that he gave directions in regard to his affairs, made bargains and transacted business, and was consulted by his neighbors for the last eight or ten years of his life, and down to within a year or two of his death, and was esteemed a man of sound judgment and good business capacity. But more especially, and what is the most important part of the evidence, it is shown by the testimony of Mr. Leavenworth, who drew the will and the first codicil, and was present when they were executed, and by Mr. Burdick, who drew the two last codicils and superintended their execution, that on all those occasions he was apparently in the perfect possession of his faculties, and fully apprehended the nature of the business he was transacting, and avowed distinctly that the testamentary dispositions he then made were in precise accordance with his views and intentions. This should be conclusive as to his condition at the time those instruments were executed, and that is the important inquiry and controlling consideration in the case. It is not enough that a party may, at some prior period, have been laboring under some disability, but the question is, had he the capacity to do the act which he performed, at the time of its execution. Until the contrary appears, sanity is to be presumed; and where an act is sought to be avoided on the ground of mental disability, the burden of proof is on the party who alleges the disability. (*Jackson* v. *King*, 4 *Cowen*, 207.) Or, as it was well stated in this case, by the late Chief Justice Spencer, *arguendo*, "The burden of showing a want of capacity is upon the plaintiff; and if the defendant can rebut his evidence, by showing a general capacity, or a lucid interval accompanying the act, or sufficient mind to know what he was doing, the case on the defendant's part is made out. If he can

In the matter of Conover *v.* Devlin.

succeed even in neutralizing the evidence, the conclusion of law is that he was sane." This proposition, although stated by counsel, is yet, considering the source from which it proceeds, of authority almost equivalent to a judicial determination, and is abundantly borne out by the principles laid down in the celebrated case of *Stewart's Executor* v. *Lispenard*, (26 *Wend.* 255.) In that case it is said that courts in passing upon the validity of a will, do not measure the extent of the understanding of a testator, but if he be not wholly deprived of reason, whether he be wise or unwise, he is the lawful disposer of his property, and his will stands as a reason for his actions. It is said, still further in that case, that a man's capacity may be perfect to dispose of his property by a will, although he is inadequate to the management of other business, and incompetent to make contracts for the purchase and sale of property. There is no necessity, in this case, of pushing the principle to any such extent, for we have seen that the testator had this capacity, in addition to the *mens disponendi* which the surrogate has found he clearly possessed. See further on this point, *Blanchard* v. *Nestle*, (3 *Denio*, 37, *and note.*)

Upon the whole case, I am entirely satisfied that the surrogate came to a just conclusion, upon the hearing before him, and that his order should accordingly be affirmed.

[OSWEGO GENERAL TERM, July 7, 1857, *Hubbard, Pratt, W. F. Allen* and *Bacon,* Justices.]