<hr/>

NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-GATE.—October, 1887.

PECK *v.* BELDEN.

*In the matter of the application for probate of a paper propounded as the will of* SARAH H. PECK, *deceased.*

Where an alleged will has been prepared, or its execution procured, by one interested in its dispositions, the ordinary burden of proof resting upon a proponent is increased by reason of the suspicion, which the law indulges, that the instrument may express the wishes of the beneficiary, rather than those of the decedent.

The paper purporting to be the will of decedent, an unmarried woman who left a number of blood-relatives, her surviving, was propounded by one who for many years had been her physician, was directly instrumental in procuring its execution, and was constituted sole beneficiary and executor. It appeared that decedent was, in the judgment of one of the subscribing witnesses, a physician, near the border line of insanity at the time of subscription; that she had repeatedly demurred to executing the instrument when requested to do so by proponent; and that the chirography resembled that of proponent, who, however did not admit that it was his own:—while, on the other hand, the evidence failed to show who originated the alleged will, in whose custody it had remained, how proponent obtained possession, or whether decedent had ever given any instructions as to its contents.—

*Held,* that the paper was undeserving of probate.

APPLICATION for probate of decedent's will. The facts are stated in the opinion.

BIRDSEYE, CLOYD & BAYLISS, *for proponent.*

N. B. SANBORN, *and* S. J. CROOKS, *for contestants.*

THE SURROGATE.—This decedent, who was a resident of the city of New York, died on the 31st of October last, leaving as her surviving next of kin and heirs at law a sister of the whole blood, a brother and a sister of the half blood, three nephews and two nieces.

On the day following her death, Dr. Ebenezer B. Belden propounded for probate in this court a paper purporting to be her last will and testament. No one of decedent's relatives, near or remote, is named in this instrument as a beneficiary; if it is in truth her will, her entire estate, which is admittedly of very considerable value, is now the property of the proponent, and its administration must be committed to his hands as sole executor. All the heirs at law and next of kin of the decedent have appeared in opposition to the propo-

nent's claims, and insist that, upon his own showing,—
for he has rested his case—his petition for probate
should be denied.

It is not disputed that, for many years prior to the
execution of this paper, the proponent and decedent
sustained to each other the confidential relation of
physician and patient; nor is it disputed that the pro-
ponent was directly instrumental in procuring the
paper to be executed. Its two subscribing witnesses
are George Holl and Dr. John E. Stillwell. The latter
acted as witness upon the express request of the pro-
ponent, and, upon a like request, invoked the services
of his associate, Mr. Holl. Dr. Stillwell was at the
time (June, 1882) employed as an assistant in Dr.
Belden's office, and the two subsequently became
partners. As to the origin of this alleged will, the
evidence is utterly silent. There has been no proof
of instructions and no production of a draft; the pro-
ponent has not undertaken to show by whose hand
the paper was written, or to controvert the evidence
strongly tending to show that the handwriting is his
own. Dr. Stillwell's testimony in this regard is as
follows: He said at first that the handwriting of the
alleged will bore a resemblance to Dr. Belden's, and
might be his, though he believed the contrary. He
subsequently testified, after further scrutiny, " I be-
lieve it is in the handwriting of Dr. Belden." Upon
the production of a paper written by the proponent in
court and containing his signature, and a copy of a
portion of the instrument in controversy, Dr. Stillwell
said, in answer to a question whether he adhered to
the belief that that instrument was in Dr. Belden's

hand, "There are remarkable points of resemblance, but I cannot determine."

If I were required to pass upon the question now under consideration, by my own unaided comparison between the will and the piece of writing which is admittedly the proponent's own, I should be greatly perplexed; but I see no such marks of dissimilarity between the chirography of the one paper and that of the other as to dispel the conviction, forced upon me by Dr. Stillwell's testimony and the proponent's silence, that the two pieces of writing are the work of the same hand. Now the proponent stands before the court, not as admitting that this alleged will was written by himself. On the contrary, out of the mouth of his counsel, he claims that the evidence will not warrant that conclusion. This is to my mind a circumstance of the gravest importance, in view of a legal doctrine which counsel for the contestants invokes in behalf of their clients.

That doctrine may be thus stated : Where a will has been prepared or procured by one interested in its provisions, an additional burden is imposed upon those who seek to establish it; the circumstance is regarded by the court with suspicion and jealousy, and there must be stronger proof than would else be required that the paper propounded expresses the free unbiassed testamentary purpose of the alleged testator, and not merely the wishes of the interested beneficiary. Moreover, the existence of a confidential relation, such for example as subsists between physician and patient, implies of itself peculiar opportunities for the exercise by the former over the latter of influence and author-

ity, so that if he has been instrumental in procuring from his patient a will containing provisions greatly to his advantage, " fraud and undue influence will readily be inferred unless all jealous suspicion is put to rest" by satisfactory testimony (Schouler on Wills, 256 ; Newhouse v. Godwin, 17 *Barb.*, 236 : Barry v. Butlin, 1 *Curt.*, 637 ; Baker v. Batt, 1 *Curt.*, 135 ; Wilson v. Moran, 3 *Bradf.*, 172 ; Ingram v. Wyatt, 1 *Hag. Ecc.*, 384 ; Crispell v. Dubois, 4 *Barb.*, 393 ; Kinne v. Johnson, 60 *Barb.*, 69 ; Post v. Mason, 91 *N. Y.*, 539 ; Trumbull v. Gibbons, 23 *N. J. Law*, 117 ; Boyd v. Boyd, 66 *Penn. St.*, 283 : Durling v. Loveland, 2 *Curt.*, 225).

Now, the suspicions of undue influence and fraud excited by the testimony upon which I have thus far commented have not been removed, but on the contrary have been greatly strengthened, by other portions of the evidence.   I do not deem it necessary to review that evidence in detail.   It shows that the decedent was of doubtful testamentary capacity at the time with which we are here concerned ; that, in the judgment of Dr. Stillwell, she was then near the border line between sanity and insanity, and passed that line soon afterwards ; that she " demurred " when Dr. Belden's assistant asked her to execute this pretended will, and said that before signing she wanted time to consider, because its provisions were not quite to her liking ; that she repeated her demurrer when for certain reasons assigned by Dr. Stillwell he repeated his request.   It *fails* to show who originated this will ; whether or not the decedent ever gave instructions regarding it ; where it has been since it came into be-

ing; how it fell into the possession of the proponent himself.

The paper is not deserving of probate.