MONROE COUNTY.—HON. JOSEPH A. ADLINGTON,
SURROGATE.—March, 1889.

MATTER OF BARTHOLICK.

*In the matter of the application for the probate of
the will of* JOHN BARTHOLICK, *deceased.*

A granddaughter of a deceased sister of a decedent who has left a brother
and widow, is not next of kin, although an heir at law of decedent. In
case of intestacy of decedent, she takes no part of his personal property,
and if decedent has left a will relating only to personal property, she is
not entitled to a citation to attend its probate. But where such will
purports to dispose of both real and personal property, she becomes en-
titled to citation as one of the heirs at law, and has a right to contest
the probate so far as it affects her interests.

A testator, although old and feeble, and sometimes failing to recognize
familiar persons and places, frequently declaring that he was not fit to
do business, living almost alone, a constant sufferer from dyspepsia,
occasionally attacked by vertigo, and doing little business except to at-
tend to his property and investments; nevertheless attended to his bus-
iness shrewdly to the last week of his life, and knew the nature and
extent of his property, and who the persons were, or who might be the
proper objects of his bounty. *Held,* that such a testator has testa-
mentary capacity.

To refuse probate of a will on account of undue influence, such influence
must be affirmatively proven, either by direct evidence, or by proof of
circumstances from which it can be fairly and properly inferred.

Where the draftsman of a will is at the same time a legatee, the law requires
him to prove that interest and opportunity have not, in his own behalf,
led him into improper and pernicious activity.

Where a legatee who acted as draftsman of a will, shows that the document
is substantially a copy of a former will of the decedent, that the drafts-
man did the writing at the request of the testator, and in accordance
with his instructions, that the instrument was read over before its exe-
cution by testator, and that the draftsman was not present at the exe-
cution thereof, that proceeding having been superintended by an
attorney who had been the decedent's legal adviser, and who had been
the draftsman and witness of former wills made by him, this expla-
nation is satisfactory, and removes any presumption of undue influence
on the part of such legatee.

MATTER OF BARTHOLICK.

APPLICATION for probate of the will of John Bartholick, deceased.

The facts appear in the opinion of the Surrogate.

J. W. STEBBINS, and THEODORE BACON, *for proponent.*

THOMAS RAINES, *for* JOSHUA T. BARTHOLICK *and others, next of kin.*

STULL & FOOTE, *for* LUISITA B. KIRLEY, *contestant.*

GEORGE TRUESDALE, *for the widow.*

THE SURROGATE.—The paper presented for probate as the last will and testament of the above named decedent bears date June 2, 1888. Mr. Bartholick died on the seventh day of July, of the same year, in the city of Rochester, N. Y., at the age of eighty-two years. His only surviving relatives of the blood are his brother, Joshua T. Bartholick, the three adult children of said brother and the contestant, Luisita B. Kirley, the granddaughter of a deceased sister of the decedent.

Mr. Bartholick was a somewhat singular man. He had few friends, and no intimates. His education and early advantages were of a limited character, but he had shrewd sense and fair natural abilities. He had been married, but the union was childless, and apparently not congenial. A separation had taken place long ago, and his wife has lived for many years in Detroit, Michigan, and still survives. A formal correspondence had been kept up, and he regularly sent a moderate sum of money for her support.

Many years ago he had become the compounder and vender of a popular nostrum, and in that manner had acquired not only a competence of worldly goods, but

also the title "Doctor," so much abused and so indiscriminately applied. In the last years of his life he lived almost alone, a constant sufferer from dyspepsia, occasionally attacked by vertigo, and doing little business, except to attend to his property and investments. He seems never to have had any special church connections, or settled religious convictions, until within a few months of his death, when he became a convert to the Catholic faith, and united with the Catholic church.

The decedent left an estate valued at about $100,000, nearly one half of which is personal property, and the rest real estate.

The alleged will makes charitable and benevolent bequests, amounting to $2,400. It gives the widow property worth about $7,600, to be taken in lieu of dower; to a stepdaughter, $3,000; to the contestant a bond and mortgage for $5,100, and a cottage at Troutsburg, N. Y., with its furniture. There is also a legacy to Lizzie Wiggins, the decedent's housekeeper, of certain household furniture, a small bond and mortgage, and $5,000, and a legacy to Rev. Charles Flaherty, of $15,000.

The instrument specifically devises seven parcels of real estate to Albert F., Jonathan W. and Ellen Bartholick, the children of decedent's only brother, and directs that all the rest, residue and remainder of the estate, both real and personal, shall be equally divided among the three persons last named and Mrs. Kirley, who alone objects to the probate of the alleged will.

Although the contestant is an "heir-at-law," she is not "next of kin" to the decedent. Code Civil Pro-

cedure, § 2514, subd. 12. If he has died intestate she will take no part of his personal property, but the whole thereof, after payment of debts, will go to the widow and only brother. R. S., part 11, chap. 6, tit. 3, art. 3, § 75, subds. 3, 11; (vol. 4, 8th ed, 2565–6.)

The latter have both been duly cited in this proceeding, and appear herein, but make no objection to the probate of the will, or to its dispositions of the decedent's property. If the will had related exclusively to personalty, the contestant would not have been entitled to a citation to attend its probate, but as it purports to dispose of both real and personal property she became entitled to citation as one of the heirs-at-law, and has the right to contest the probate, so far as it affects her interests. The objections filed on her behalf allege that, at the time of the pretended execution of this instrument, the decedent was not of sound mind, memory or understanding; that the execution thereof was obtained through the undue influence of Lizzie Wiggins and Charles Flaherty, or of some other person; and that the bequests to the said Wiggins and Flaherty were inserted therein without the knowledge of Mr. Bartholick.

A vigorous and determined opposition has been made to the probate of this instrument, and has been conducted with signal ability by the learned counsel for the contestant.

The grounds of objection will now be specifically considered.

First. Testamentary capacity. Considerable evidence was given on this point by the contestant, the most weighty of which was for the purpose of proving

that, for the last few months before his death, the decedent was incompetent to make a will by reason of physical and mental feebleness. It was shown that the infirmities of age were fast increasing upon him; that on a few occasions he failed to recognize familiar persons and places; and that he frequently declared that he was not fit to do business. On the other hand, it plainly appears that he did continue to do business with shrewdness and sagacity almost to the last week of his life; that he knew the nature and extent of his property, the persons who were, or might be, the proper objects of his bounty; and that he talked intelligently on general topics of interest, except when suffering from headache or giddiness, at which time he showed a natural inclination to be let alone. I think that testamentary capacity was satisfactorily established, within the authorities. Cornwell v. Riker, 2 *Dem.* 354; Brown v. Torrey, 24 *Barb.* 583; Reynolds v. Root, 62 *Id.* 253; Horn v. Pullman, 72 *N. Y.* 269; Coit v. Patchen, 77 *Id.* 536.

Second. Undue influence. In nearly every contest over the probate of wills, undue influence is almost invariably alleged, and some circumstances, upon which to found surmise, speculation and suspicion, are rarely wanting. Of course, every will proved to have been procured by unlawful influence, should be refused probate, and every attempt to gain a benefit in such manner should be defeated.

The moral delinquency and dishonesty implied in this charge will not, however, be presumed. Undue influence must be affirmatively proved, either by direct evidence, or by proof of circumstances from which

it can be fairly and properly inferred.   Cudney v. Cudney, 68 *N. Y.* 148: Matter of Martin, 98 *N. Y.* 193.

In the present case it cannot be claimed that the beneficiaries, to whom four fifths of this estate are given, are chargeable with undue influence or improper conduct in its procurement, for they did not know of either its preparation or execution.   The allegation is made, however, that this will was procured by the undue influence and fraud of Miss Wiggins and Mr. Flaherty, to whom about one fifth of the estate is bequeathed.   There is no direct proof of this accusation; but it is insisted that it may be properly inferred from the relations of these persons to the decedent, from their opportunities to exercise improper influence over him, and their interest in so doing; and also from the alleged change in the testamentary intentions of the decedent.

Miss Wiggins had been the servant and housekeeper of the decedent for nearly ten years, and for the last five years had been the only permanent inmate of his house besides himself.   She had been his nurse in sickness, and had frequently assisted him in his business affairs.   She had, therefore, had opportunity to acquire over him such influence as would naturally flow from these relations, but that she ever had, or exercised any controlling or coercive power over him does not appear.   He seems, for a long time to have intended to make testamentary provision for her, and each of two former wills contains a bequest in her favor.

Mr. Flaherty had been an acquaintance of Mr. Bar-

tholick for several years. The decedent had visited him at his home in Mount Morris, on several occasions, and had appeared to have a kindly interest in him.

But Mr. Flaherty is a priest of the Catholic church, and it is strongly urged that he held the relation of spiritual adviser to the decedent, and, therefore, was in a position to improperly influence and control the latter's testamentary action; and that, as he is a legatee, such influence will be presumed against him. It does not appear, however, that the Rev. Mr. Flaherty ever held any religious conversations with the decedent, or ever assumed any professional relations toward him, either before or after Mr. Bartholick's conversion to the Catholic faith, or that he was in any manner instrumental in effecting that conversion. On the contrary, it does affirmatively appear that, at the request of the contestant herself, another priest of her church called upon the decedent, baptized him, and instructed him in religious doctrine. The evidence, in my opinion, does not warrant a conclusion that Mr. Flaherty was ever the spiritual adviser of the decedent, or that there was a confidential professional relation between the two, from which undue influence should be presumed.

Third. Another and more serious objection to this instrument is, that it is written by Mr. Flaherty, who, by its provisions is given a large legacy, and nominated as one of the executors.

Propriety and delicacy would suggest to any one who is to be made a beneficiary by the will of a friend, that the instrument should be drawn by some disin-

terested person at the direction of the proposed testator, and executed in the absence of the intended beneficiary.

The law looks with suspicion upon every transaction of this character, and reasonably requires the draftsman of a will, who is also a legatee, to prove that interest and opportunity have not led him, in his own behalf, into improper and pernicious activity. Peck v. Belden, 6 *Dem.* 299; Crispell v. Dubois, 4 *Barb.* 393; Matter of Will of Smith, 95 *N. Y.* 516.

The circumstances relied on, in the present case, to excuse the legatee's acting as the draftsman of this instrument are that the document is substantially a copy of a former will of decedent; that Mr. Flaherty did the writing at the request of Mr. Bartholick, and in accordance with his instructions; that the instrument was read over before its execution by the decedent, and that the draftsman was not present at the execution thereof, that proceeding having been superintended by an attorney, who had been the decedent's legal adviser, and the draftsman and witness of former wills made by him.

The explanation appears to be satisfactory and meets the requirements of the decisions upon this subject. Wilson v. Moran, 3 *Bradf.* 181; Newhouse v. Godwin, 17 *Barb.* 236; Matter of Will of Smith, 95 *N. Y.* 516; Nexsen v. Nexsen, 2 Keyes, 229.

Some declarations of the decedent were proved, which tended to show that, for several years before his death, he had intended to leave his estate, or the larger part of it, to the contestant, and it is therefore maintained that the present will shows a radical

change of testamentary purpose. It would seem, however, that the intention to bestow all his property upon Mrs. Kirley, to the prejudice of his aged and dependent widow, and other relatives, could never have taken very firm hold upon the decedent's mind, as no will was ever made by him to effectuate such intention.

In the will of July, 1886, the provision for the contestant was a devise of the so-called "American House" property in Rochester, the value of which is about the same as that of the property given her by the present will. The will of May, 1888, contained substantially the same provision for her as this one, and under the latter Mrs. Kirley receives about as much of the decedent's estate as would fall to her under the law of descents, if Mr. Bartholick had died intestate, and his real estate were subject to the widow's dower.

There may be a decree admitting this will to probate.