IN THE MATTER OF THE APPLICATION FOR THE PROBATE OF AN INSTRUMENT ALLEGED TO BE THE LAST WILL AND TESTAMENT OF SAMUEL WESTURN, DECEASED.

*Will — burden of proof where the draftsman was the sole beneficiary — fraud and undue influence.*

A testator devised and bequeathed all his property, amounting to $40,000, to one Burgess, the draftsman of the will, who was not an attorney, although he was a magistrate accustomed to drawing legal papers, and one who to some extent had had charge of the testator's business. The only heirs and next of kin of the testa tor were the children of a deceased brother. There was no proof that the will was read over to or by the testator, or that he knew its contents; nor was there any evidence of an intention previously expressed by him to make a will in favor of Burgess, or of any direction by the testator to the draftsman at the time it was drawn. After making the will the testator wrote a niece as follows : "I want you to come to make it your (her) home after I am dead and gone."

Upon an appeal from the decree of a Surrogate's Court admitting the will to probate:

*Held,* that, in addition to the ordinary evidence required on applications for the probate of wills, the burden was upon the proponent Burgess to show that the testator understood the provisions of the will, and that it was not the sub- ject of artifice, fraud or undue influence.

APPEAL by the contestants, Harvey Westurn, Elmer Westurn, Adele Carney, Clement Westurn and Herbert Westurn, nephews and nieces of Samuel Westurn, deceased, from a decree, entered in the office of the surrogate of Warren county on the 24th day of November, 1890, admitting to probate the alleged will of Samuel Westurn after a trial in the Surrogate's Court of Warren county.

The deceased left no wife or children, his only heirs and next of kin being the children of a deceased brother, who appeared as contestants to the probate of the will and appellants on this appeal. Lewis Burgess, the proponent and sole executor named in the instrument, drew the same, and was the sole legatee and devisee named in the body of the instrument. On the margin of the will was a note directing a cheese factory to be given to Seymour L. Westurn. The property devised and bequeathed in the will was valued at from forty to fifty thousand dollars. The will was admitted to probate by the surrogate and letters testamentary were issued to the proponent and the contestants appealed to this court.

*A. Armstrong* and *John C. Keeler*, for the contestants, appellants.

*H. A. Howard*, for the proponent, respondent.

MAYHAM, J.:

The position which the contestants seemed to take before the surrogate, that the testator was wanting in testamentary capacity, upon which subject considerable evidence was taken, does not seem to be urged here except as his physicial and mental condition can be made to bear upon the question of deception or undue influence, claimed to have been practiced by the proponent upon the testator in shaping the provisions of the will.

It is quite apparent from all the evidence that the testator was not wanting in testamentary capacity to make a valid testamentary disposition of his property; and if this instrument was the free and voluntary act of the testator, with a knowledge of its provisions at the time it was made, it must be upheld as his will.

It is urged by the contestants that the confidental relations that existed between the proponent and testator, the fact that the will was drawn by the proponent in his own handwriting, and that he is made the sole beneficiary, to the exclusion of the kinsfolk of the testator who are the more natural objects of his bounty, and the failure of the proponent to prove that the will was read over to the testator, or by him, or that he knew its contents, raise the legal presumption of fraud or undue influence, or both; that such presumption is not overcome by evidence on the part of the proponent, and that the probate of the instrument as a will should for that reason be denied.

The evidence discloses that the business relations between the proponent and testator in his lifetime had been close and somewhat of a confidental character; they had been partners in business years before and the proponent, although not an attorney, was a magistrate and accustomed to·drawing business and legal papers, and to some extent had charge of testator's business, there being no practicing lawyer in that town or vicinity.

While the relation of attorney and client did not exist between Westurn and Burgess, still it is apparent from the evidence that the former regarded the latter as a trusted business assistant, and to some extent confidential adviser in matters of a legal and business nature. It is most natural that the testator, in the absence of a lawyer to whom he could apply for the transaction of this important business, should select this proponent who had been accustomed to do his business for him, and who, to a certain extent, had had charge of his business, and who, as appears from the evidence, was the substitute for the lawyer in that community. Had not the proponent been named in the will as the principal beneficiary, no question could have arisen out of such a situation. But when we find that the trusted friend and draftsman of this will, is made in it not only the sole executor, but devisee and legatee of this entire estate, to the exclusion of all of the next of kin and heirs-at-law of the testator, we are called upon to inquire and determine whether, in the light of rules of law governing the testamentary disposition of property, the proponent has, by his proof, overcome the legal presumptions that arise out of the circumstances of this case.

In pursuing this inquiry we must start with the concession and assertion of the testator's absolute legal right and power to dispose of his property by will, as he pleases, without regard to any supposed claims founded upon kinship or ties of consanguinity or affinity.

These relations can only be considered as bearing upon the question of the probabilities of the instrument offered for probate, being the free and voluntary will of the testator. But the fact that a will is drawn by one who is a principal beneficiary in it has always been regarded as a suspicious circumstance tending to cast doubt upon the validity of the instrument. By the civil law, such a will drawn by a legatee is absolutely void. But the rule of the common law in England and in this State has not followed the civil law, and, while

regarding it as a suspicious circumstance, it has not alone been regarded as ground for declaring a will void.

In *Marvin* v. *Marvin* (3 Hun, 141), MASON, J., in discussing this question, uses this language : " Yet, the better rule to be deduced from the adjudged cases is, that a presumption of undue influence shall be indulged in against them when the testator is feeble, weak and in advanced old age.   I do not mean to say that such legal presumption will be indulged in, in every conceivable case, but the rule to be deduced from the adjudged cases in our own courts will fully justify this charge in its application to the case at bar."

In that case the one who drew the will was a lawyer, and acted as the legal adviser of the testatrix.

In *Newhouse* v. *Godwin* (17 Barb., 236) the testator left a wife and sister in comparatively destitute circumstances, and gave the bulk of his estate to his counsel, who drew the will, and whose influence over the testator extended beyond professional matters. There being no evidence to show that it was in accordance with previous directions, or that the testator had previously designed to give anything to him, and it being proved that the testator, in consequence of illness, was in a state of mind in which he readily yielded or assented to the suggestion of others, it was held that the will was invalid, as having been obtained by undue influence, and the decree of the surrogate refusing to admit the will to probate was affirmed by this court on appeal.

In that case the will was read to the testator, which does not appear to have been done in the case at bar.   In that case STRONG, J., delivering the opinion of the court, says : " The appellant drew the will.   There is nothing to show that it was in accordance with previous directions, or that any directions were given. It is true that it was read to the testator and that he must have assented to it.   His assent does not, however, prove that it was his will, as the evidence shows that he readily assented to whatever was proposed to him.   This peculiarity, coupled with the entire absence of any proof that the testator had previously designed to give anything to the appellant, or that he had given him any instructions to draw the will, lead strongly to the inference that it was the will of the appellant, and not of the testator."

It is true that the case from which we have quoted differs from

the one we are considering, in this, that the will was in that case read to the testator; but that, in consequence of mental and physical weakness, the will of the draftsman was deemed to dominate that of the testator; but in the case at bar, where it does not appear that the will was read by or to the testator, or that he knew its contents, and where the draftsman was the principal beneficiary, the conclusion is quite as irresistible that this was the will of the draftsman and not of the testator, as in the case from which we last quoted.

In this case, as in that, there is no evidence of a *previously* expressed intention by the testator to make his will in favor of the proponent, or of any direction or instruction by the testator to the draftsman as to the disposition of the property under the will. In this case, as in that, the draftsman is a beneficiary under the will.

It is perhaps worthy of note, in this connection, that while the evidence discloses no previous expression of intent on the part of the testator to make the proponent the recipient of his property, there is in letters and correspondence of the testator with his brother Seymour and his wife and daughters such a cordial recognition of kinship as to raise a presumption that he intended them or some of them as the objects of his bounty; in one of which he expresses a wish that a niece make his home her home after his death.

It is true that this letter was written long after the date of the will, but as that instrument could take effect only at his death it may furnish some slight evidence of his understanding of the provisions of that instrument, especially when considered in connection with the last clause before the attestation clause in the will, which reads as follows:

"And I hope and believe that the said Lewis Burgess will use and dispose of my said property according to my wishes to him made and to the best of his judgment."

While it is not, as we have seen, the province of the court to interfere with a testator's right to exercise his free volition in the testamentary disposition of his property, the court may, in determining the question of fraud or undue influence, consider the relations existing between the testator and the natural objects of his bounty, and judging from the ordinary motives actuating men, inquire whether the will is unnatural and apparently contrary to the testator's previously fixed and determined purpose, and in such case

scrutinize closely with a view of ascertaining whether the act was free, voluntary and intelligent.

In *McLoughlin* v. *McDevitt* (63 N. Y., 213), it was held, that to establish fraud and undue influence in such a case, it is not necessary that the precise mode of committing the fraud should be proved; if it appears that the beneficiary under the will had an intent to defraud the testator in order to procure a personal advantage to himself in the will, and had the opportunity to practice deception, and a result was produced in his favor contrary to the known wishes and purposes of the testator, and no satisfactory explanation of the change is furnished, the will should be declared invalid.

It will be observed in this case that the will as presented and probated before the learned surrogate is entirely inconsistent with the express request of the testator in his letter to his niece of November 13, 1888, " I want you to come to make it your home after I am dead and gone," unless the testator had confided to the proponent some direction or instruction in reference to his property which he supposed the proponent, who is named as executor, would carry out as a part of the will of the testator.

It is urged by the appellant that this provision of the will, quoted above, is evidence, upon the face of the instrument itself, of the fraudulent design of the proponent in drawing the instrument to practice upon the credulity of the testator by inducing the belief in his mind, that some private instructions, not written in the will, could be carried out by proponent as executor, which he knew, at the time of drawing the same, could not be engrafted upon the same, or in any way affect the positive devise and bequest of the entire estate to him; and while there is no evidence *aliunde* the instrument in support of that subject, it is, perhaps, worthy of consideration in the case, in determining whether, under all the facts and circumstances, the proponent can stand upon the *prima facie* case made by him of testamentary capacity and due execution, or whether the contestants have not cast enough of suspicion upon the *prima facie* case to so shift the *onus* upon the proponent as to require explanation from him.

The proponent insists that if the draftsman of a will takes a legacy under it, it is suspicious only in connection with other circumstances indicative of fraud or undue influence, and in support of

that proposition cites *Coffin et al.* v. *Coffin* (23 N. Y., 1). In that case COMSTOCK, J., upon that subject, cites with approbation the language of Baron PARKE, in *Butlin* v. *Barry* (1 Curteis' Ecc. Rep., 637), as follows: "All that can be truly said is, that if a person, whether an attorney or not; prepare a will with a legacy to himself, it is, at most, a suspicious circumstance, of more or less weight according to the facts of each particular case, in some of no weight at all, as in the case suggested, varying according to circumstances ; for instance, the *quantum* of the legacy, the proportion it bears to the property disposed of, and numerous other contingencies."

In *Coffin* v. *Coffin* (*supra*) the draftsman of the will, who was a nephew of the testator, took the same amount bequeathed to other nephews of the testator, and it was held not to vitiate the will.

The learned counsel for the proponent insists that, before the will can be assailed, where the draftsman is a beneficiary, some other facts must be established by the contestant, tending to show fraud or undue influence, and in support of that contention cites *Post et al.* v. *Mason* (91 N. Y., 539).

In this contention he is supported by the last case cited, where, as in *Coffin* v. *Coffin* (*supra*), the attorney and draftsman receives a small share of the estate and shares with other relatives in an equal degree, whereas in another class of cases, such as *Newsen* v. *Newsen* (2 Keyes, 229), where the draftsman and attorney receives as a legacy a considerable portion of the estate, he is required to explain the transaction by more than usual formal proof.

In this case DAVIES, J., in discussing the duty of a beneficiary under such circumstances, at page 232, uses this language: "It casts upon him, in addition to the ordinary burden of a proponent of a will, the additional one of establishing it by testimony of a more clear and satisfactory character. The courts demand, in such a case, satisfactory proof that the party executing the will clearly understood and fully intended to make that disposition of his property which the instrument purports to direct."

It is true that in that case the will was admitted to probate, but it was upon the explanatory evidence of the draftsman, who testified to all the circumstances of the execution and of the testatrix's knowledge of the contents of the will, which had been in her possession for some time before its execution. But it is urged by the

learned counsel for the proponent that the legal presumption obtains and exists, in support of his contention, that the testator knew the contents of the will, and cites *Matter of Coleman* (111 N. Y., 227) upon that point. That was a case of the admissibility of attorneys who drew the will, as witnesses to its execution, and where objections were made under section 835 of the Code and upon the question of testator's waiver of the privilege of the attorneys by making them subscribing witnesses, the court says: " The law presumes knowledge on his (testator's) part of its provisions," etc.

We cannot believe that the court intended by that expression to extend that doctrine of presumption to a case like this. We think, therefore, in this case, the burden was cast upon the proponent of showing that the testator understood the provisions of this will, and that it was not the subject of artifice, fraud or undue influence, by proof in addition to the ordinary evidence required by statute to establish a will and admit it to probate. We do not see how this will can be declared a trust, as there is no *cestui que trust* named in it ; and in such case if it created a trust the trustee would hold it without accountability to anyone, unless it should be held that a resulting trust was created in favor of the testator's heirs-at-law or next of kin, in which case there is no apparent reason for declaring a trust, as the estate would descend to them by the laws of distribution or descent, either directly or through the medium of a personal representative.

The decree of the surrogate is reversed and an issue awarded to be tried by a jury, issues to be settled by a judge of this court, unless fixed by the stipulation of the parties.

LEARNED, P. J., and LANDON, J., concurred.

Decree reversed, issues ordered to be tried at circuit, order and issues to be settled by MAYHAM, J., costs to abide event.