Matter of the Probate of a Certain Instrument Alleged to be the Last Will and Testament of WILLIAM A. RINTELEN, Deceased.

(Surrogate's Court, New York County, March, 1902.)

**Will — Executed by a confirmed inebriate largely in favor of his attorney — Undue influence.**

> Where a confirmed and constant inebriate devised to an attorney, who had rendered him little service beyond paying him a daily stipend from the estate of his deceased brother, the sum of five thousand dollars, constituting about one-half of his estate, and also made him executor although the testator had a sister and nephew whom he also benefited in his will, and it was not established before the court that the testator had dictated the terms of the will or fully comprehended its tenor before or when he executed it in the presence of the attorney, the surrogate denied it probate upon the ground that he was not satisfied that the instrument was the free, untrammeled and intelligent expression of the will of the testator.

PROCEEDINGS upon the probate of a will.

Francis B. Chedsey, for proponent.

Spoull, Harmer & Spoull, for contestant.

THOMAS, S. The decedent was a confirmed inebriate, and for some time before executing the paper propounded as a will had slept in a lodging-house of a class where lodging, if paid for daily, cost fifteen cents per night, and, if paid weekly in advance, cost one dollar per week. A sum of money belonging to him was intrusted by his sister, who was the executor of the will of a de-

ceased brother, with the attorney who is now the petitioner in this proceeding, and from this fund his necessities were supplied. It was the habit of the decedent to call upon the attorney each morning and receive about two dollars. Clothing was furnished him by a retail dealer in the neighborhood, a client of the attorney, upon orders of the attorney. The decedent expended the moneys thus dealt out to him for food and liquor, and was generally, if not uniformly, quite drunk before the end of the day. Upon the morning of January 5, 1901, the decedent called at the office of the attorney, and there signed the propounded paper, which had been prepared by a clerk of the attorney, in the presence of another clerk of the attorney, and of the clothing dealer already mentioned, who subscribed their names as witnesses. The attorney was present at the time of the execution of the document, and the decedent answered a question or questions put by the attorney, as to whether it was his will, and as to whether he requested the witnesses to subscribe their names in attestation of it, in the affirmative. During the whole interview he did not speak more than two or three words. The instrument thus prepared gave to the attorney a legacy of $5,000. The next of kin of the decedent were a nephew, to whom a legacy of $1,000 was given, and his sister, already alluded to, who was made residuary legatee. The attorney was nominated as executor. The entire amount of the estate does not appear from the evidence, but from the affidavit of the proponent and the statements of counsel I am led to believe that it did not exceed about $10,000. It does not appear what, if any, directions were given by the decedent for the preparation of this paper, or that he subsequently made any declarations to any one showing that he comprehended what he had done. The subscribing witnesses were twice examined, once before the probate clerk, and once in open court before me, and gave differing versions as to whether the will was read in the presence and hearing of the decedent before execution. Taking all of their statements on this subject, I am not satisfied that the purport and meaning of the document was made clear to him. It is not shown that the attorney had ever rendered any valuable service to him other than that which I have recited, or that his personal relations with the attorney were so intimate and friendly as to make a gift to the attorney a natural expression of his sentiments. His sister and nephew were

Surrogate's Court, New York County, March, 1902. [Vol. 37.

recognized in the will, and no facts were shown which would account for preferring his attorney to either of them. In August, 1901, about seven months after making the paper, the decedent died. The relation of the attorney toward the decedent was one of peculiar confidence and gave him unusual power of control. The mind of the decedent was, of necessity, impaired by his excesses, and the cravings of his appetite, which made it necessary to hold him under strict control in the expenditure of his own money, made him an easy subject for the exercise of undue influence. It was, notwithstanding all of these facts, competent for the decedent to make a good will of the kind here propounded, but the circumstances were such as to make a case which required explanation, and which imposed upon the proponent the burden of satisfying the court that the will was the free, untrammeled, and intelligent expression of the will of the testator. Matter of Will of Smith, 95 N. Y. 516, 522; Matter of Westurn, 60 Hun, 298; Peck v. Belden, 6 Dem. 299; Turhune v. Brookfield, 1 Redf. 220. This explanation has not been furnished and this burden of proof has not been sustained. The application for probate will be denied.

Application for probate denied.