was a brother, George Herr, and a sister, Dora Hatling. The sister died in October, 1876, leaving no children, but a husband, who subsequently died. The question which now arises is whether John Herr died before or after his sister Dora Hatling, as, if he died before then, Dora Hatling's representatives are entitled to share in his estate, while, if he died subsequent, then his brother, George Herr, is entitled to the whole estate. As there is no proof on the matter whatever, is there any presumption as to the time of death? In the cases where death is presumed from absence, there are many times circumstances which warrant the court in fixing the period of death. A frequent illustration of this is where the party who has disappeared has gone on a sea voyage, and the vessel has never been heard from. In the following cases such facts existed: In re Ketcham's Estate (Sur.) 5 N. Y. Supp. 566; In re Ackerman, 2 Redf. Sur. 521; Sheldon v. Ferris, 45 Barb. 124; Oppenheim v. Wolf, 3 Sandf. Ch. 571; Gerry v. Post, 13 How. Prac. 118; Merritt v. Thompson, 1 Hilt. 550; King v. Paddock, 18 Johns. 141; McCartee v. Camel, 1 Barb. Ch. 455. The principle of these cases, of course, does not apply where, as in the case at bar, there is no evidence except the unexplained absence of the deceased. In Eagle v. Emmet, 4 Bradf. Sur. 117, the question of the presumption of the time of death was discussed at great length, the final conclusion being as follows:

"If no sufficient facts are shown from which to draw a reasonable inference that death occurred before the lapse of seven years, the person will be accounted, in all legal proceedings, as having lived during that period."

The Eagle Case has been followed in Seligman v. Sonneborn, 1 How. Prac. (N. S.) 465, and In re Sullivan, 51 Hun, 379, 4 N. Y. Supp. 59. It seems to me that the decision of the Eagle Case is correct, as, if the court is not warranted in presuming death in the case of mere absence, until seven years have elapsed, for the purpose of issuing letters, how can the court, on the same facts, when letters are issued, presume death at any earlier period?

I therefore decide that the presumption is that John Herr did not die until seven years after he disappeared, and that therefore his sister, Dora Hatling, died before him.

In deciding this case, I wish to particularly commend counsel for the respective parties for the very excellent briefs which they have submitted. I think the habit of study and care which these young men have exhibited will bring its sure return in success in their career.

Decreed accordingly.

---

(37 Misc. Rep. 462.)

### In re RINTELEN.

(Surrogate's Court, New York County. March, 1902.)

WILL—PROBATE—EVIDENCE.

A confirmed inebriate devised to an attorney, who had rendered him little service besides paying him a daily stipend from the estate of his deceased brother, $5,000, about one-half of his estate, and made him executor, though he had a sister and nephew, who also benefited under his will. There was no evidence that testator dictated the will or comprehended its tenure. *Held,* that probate would be denied.

In the matter of the probate of the last will of William A. Rintelen.
Application for probate denied.

Francis B. Chedsey, for proponent.
Spoull, Harmer & Spoull, for contestant.

THOMAS, S. The decedent was a confirmed inebriate, and for
some time before executing the paper propounded as a will had
slept in a lodging house of a class where lodging, if paid for daily,
cost 15 cents per night, and, if paid weekly in advance, cost $1 per
week. A sum of money belonging to him was intrusted by his
sister, who was the executor of the will of a deceased brother, with
the attorney who is now the petitioner in this proceeding, and from
this fund his necessities were supplied. It was the habit of the
decedent to call upon the attorney each morning and receive about
$2. Clothing was furnished him by a retail dealer in the neighbor-
hood, a client of the attorney, upon orders of the attorney. The
decedent expended the moneys thus dealt out to him for food and
liquor, and was generally, if not uniformly, quite drunk before the
end of the day. Upon the morning of January 5, 1901, the decedent
called at the office of the attorney, and there signed the propounded
paper, which had been prepared by a clerk of the attorney, in the
presence of another clerk of the attorney, and of the clothing dealer
already mentioned, who subscribed their names as witnesses. The
attorney was present at the time of the execution of the document,
and the decedent answered a question or questions put by the at-
torney, as to whether it was his will, and as to whether he requested
the witnesses to subscribe their names in attestation of it, in the
affirmative. During the whole interview he did not speak more
than two or three words. The instrument thus prepared gave to
the attorney a legacy of $5,000. The next of kin of the decedent
were a nephew, to whom a legacy of $1,000 was given, and his sister,
already alluded to, who was made residuary legatee. The attorney
was nominated as executor. The entire amount of the estate does
not appear from the evidence, but from the affidavit of the pro-
ponent and the statements of counsel I am led to believe that it
did not exceed about $10,000. It does not appear what, if any, di-
rections were given by the decedent for the preparation of this
paper, or that he subsequently made any declarations to any one
showing that he comprehended what he had done. The subscrib-
ing witnesses were twice examined, once before the probate clerk,
and once in open court before me, and gave differing versions as to
whether the will was read in the presence and hearing of the decedent
before execution. Taking all of their statements on this subject, I
am not satisfied that the purport and meaning of the document was
made clear to him. It is not shown that the attorney had ever
rendered any valuable service to him other than that which I have
recited, or that his personal relations with the attorney were so
intimate and friendly as to make a gift to the attorney a natural
expression of his sentiments. His sister and nephew were recog-
nized in the will, and no facts were shown which would account
for preferring his attorney to either of them. In August, 1901,
about seven months after making the paper, the decedent died. The

relation of the attorney toward the decedent was one of peculiar confidence, and gave him unusual power of control. The mind of the decedent was, of necessity, impaired by his excesses, and the cravings of his appetite, which made it necessary to hold him under strict control in the expenditure of his own money, made him an easy subject for the exercise of undue influence. It was, notwithstanding all of these facts, competent for the decedent to make a good will of the kind here propounded, but the circumstances were such as to make a case which required explanation, and which imposed upon the proponent the burden of satisfying the court that the will was .the free, untrammeled, and intelligent expression of the will of the testator. In re Smith's Will, 95 N. Y. 516, 522; In re Westurn, 60 Hun, 298, 14 N. Y. Supp. 753; Peck v. Belden, 6 Dem. Sur. 299; Turhune v. Brookfield, 1 Redf. Sur. 220. This explanation has not been furnished, and this burden of proof has not been sustained. The application for probate will be denied.

Application for probate denied.

(37 Misc. Rep. 464.)

## In re RICHES.

(Surrogate's Court, New York County. March, 1902.)

**1. WILL—CONSTRUCTION—DEVISEES.**

Where testator makes his wife a life beneficiary of a trust, and bequeathed the remainder on her death to certain nephews, naming them, share and share alike, only such nephews as survive him take as tenants in common.

**2. SAME—LAPSED LEGACIES.**

Where testator leaves his estate after the death of the life tenant to four of his nephews, naming them, share and share alike, and only two survive him, the representatives of his deceased widow and those nephews who die after him are entitled to share with the living nephew in the lapsed legacies.

In the matter of the judicial settlement of the accounts of James F. Riches, executor of Patrick F. Fenning. Decree of distribution.

Amasa J. Parker (Lewis R. Parker, of counsel), for C. H. Fenning.

George Finck, for Robert C. Emlin.

James F. Tracey, for Annie E. Quigg.

Dyer & Ten Eyck, for Alice L. Taylor.

Mills & Murphy, for A. J. Sawyer.

Duane P. Cobb, for executor.

FITZGERALD, S. The testator, upon the death of his wife, whom he made the beneficiary of a trust embracing all his residuary estate, gave, devised, and bequeathed the same to his four nephews, naming them, share and share alike. This disposition in favor of the nephews is made in terms importing a present and immediate gift, the donees have been individually designated and described by name, and the shares which the testator intended they should take definitely indicated. Under these circumstances, the surviving nephews of the testator would take an indefeasible vested interest in the property disposed of, and this not as a class, but distributively, and as tenants in common. In re Elliott's Estate, 27 Misc. Rep. 258, 58 N. Y. Supp. 603; In re Kimberly's Estate, 150 N. Y.