SANDFORD F. CUDNEY et al., Appellants, v. JAMES W. CUDNEY, Respondent.

The declarations of a testator, alone, are not competent evidence to prove acts of others amounting to undue influence; but when acts are proved, such declarations may be given in evidence to show the operation they had upon the mind of the testator.

To invalidate a will on the ground of undue influence there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will ·

had the motive and opportunity to exert such influence ; there must be evidence that he did exert it.

The will of A. was disputed on the grounds of incapacity and undue influence. By the will A. devised the most of his real estate to his son J. It appeared that the testator had made three wills prior to that in question, in two of which J. was the principal devisee, although the last was more favorable to him. All of the wills were drawn by the same attorney. The last was drawn at the attorney's office, in pursuance of instructions given by the testator, J. not being present. About a year and a half before the will in question was executed, and three years before the testator's death, he left his own home, where he was living with his second wife, expressing himself dissatisfied with his treatment, and went to live with J., with whom he resided until his death. The widow testified that she and the testator did not live pleasantly together. Before the testator went to live with J. he made statements in reference to the first will, to the effect that he was induced to make it by J.'s constant importunities. The testator, for some years prior to his death, was in feeble health, and there were occasions during his illness when his mind was affected; but the evidence was that at the time of the drawing and execution of the will his mental condition was as usual, and that he acted intelligently. No proof was given of any improper acts on the part of J., or that he made any false or incorrect statements tending to influence the testator. *Held,* that the evidence was insufficient to sustain either of the grounds of objection to the will; and that it was properly admitted to probate.

(Argued December 13, 1876; decided January 16, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department affirming a decree of the surrogate of Sullivan county admitting to probate the last will and testament of Amos Cudney, deceased.

The testator died in April, 1874, leaving real estate. He left a widow, a second wife, and eight children, two of them by his first wife, one of whom is the respondent, James W. Cudney.

By the will the testator devised the principal portion of his real estate to his son James. The appellants are the widow and her children, who contested the will on the grounds of incapacity and undue influence.

The will was executed in due form. The subscribing witnesses testified that the testator was of sound mind and under

no restraint. No one was present except these witnesses. One of them was a lawyer who had drawn three wills previously for the testator, and who had been his attorney and counsel. The testator gave to his attorney at his office instructions as to the will the day before it was drawn, the respondent not being present at that time. The will was executed October 14, 1872. On the 27th day of May, 1871, the testator left his own house and his wife, and went to reside with his son James. The latter accompanied him, but it appeared that he went voluntarily. He expressed himself dissatisfied with his treatment at home, and much evidence was given showing he had good grounds for dissatisfaction. In and by the first will James was the principal beneficiary.

In December, 1867, according to Mrs. Cudney's testimony, or three years before the time when he went away, according to another witness, he had been taken sick and had been confined to his bed for some seven weeks. The second winter of his sickness he had a severe attack of inflammation of the lungs. On his recovery he caused a lawyer to be sent for and made a second will, which was more favorable to the appellants than the former or than the one in question. Declarations of the testator were proved to the effect that James by constant importunities induced him against his wishes to execute the first will. These declarations were made before he went to live with his son.

It appeared that when he was first taken sick his mind was somewhat disturbed. He was dizzy and asked why they had turned the house around, and there were some other indications of a similar character prior to his leaving his house. There was little, if any, evidence of actual disturbance of his mind after that time, although he was weak and feeble in body, and, as one witness says, was absent minded. The third will was made a short time before he left his own house, and was substantially similar to the first will, at least as far as James was concerned. There was no proof of any improper acts done by James tending to influence his father, nor did it appear that any false or incorrect statements were made by

him. The widow testified that she and the testator never lived pleasantly together; that they did not occupy the same room for five years before he went away, and that she had been separated from him during their married life for a term of fourteen months, during which time she had commenced a suit for a separate maintenance.

Further facts appear in the opinion.

*Geo. W. Lord* for the appellants.

*A. C. Niven* for the respondent. No undue influence on the part of defendant was established. (34 N. Y., 155, 162, 163, 197; 35 id., 559–610; *Hazard* v. *Hazard*, 5 N. Y. Sup. Ct. R., 79.) The testator had testamentary capacity. (*Guysling* v. *Van Keuren*, 35 N. Y., 71, 72; *Jackson* v. *Jackson*, 39 id., 157.)

RAPALLO, J. We have examined with care, the evidence in this case, and find no sufficient ground for reversing the judgment of the Supreme Court. Due proof was made of the execution of the will, and although it appears, that for some years before his death the testator had been in feeble health, and there were occasions during his illness when his mind was affected, yet we think the evidence shows that at the time of the execution of the will in question he was possessed of sufficient mental capacity to make a will. The allegation of undue influence is not, in our judgment, sustained by the evidence. The testator's leaving his own house and going to live with his son James does not appear to have been the result of any solicitation on the part of James, but does appear to have been the voluntary and spontaneous act of the testator. The dissatisfaction expressed by him in respect to his treatment when at home, whether founded on just cause or not, does not appear to have been excited by any misrepresentations made by James, nor by any influence exerted by him. The widow, herself, testified that she and the testator did not live pleasantly together, and it is quite

apparent from his conduct and declarations, that he was desirous of changing his residence. The subject of his testamentary dispositions appears to have occupied his attention to a considerable degree, for he made four wills during a period of six years. In three, if not all of these wills, he devised to his son James, the farm on which the latter resided, called the Budd farm, which was the most valuable part of the testator's estate. The last will, made after he had resided about a year and a-half with his son James, was more favorable to him than the preceding ones, and less so to his children by his second marriage, but there is no evidence of any suggestion or importunity on the part of James on the subject of any of these wills, except the testimony as to declarations of the testator, made before he went to reside with James. Such declarations, alone, are not competent evidence to prove acts of others amounting to undue influence, although when the acts are proven, the declarations of the testator may be given in evidence to show the operation they had upon his mind. Furthermore, the declarations of the testator had reference to previous wills and not to the one now in question. To invalidate a will on the ground of undue influence, there must be affirmative evidence of the facts from which such influence is to be inferred. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it, and so control the actions of the testator, either by importunities which he could not resist or by deception, fraud or other improper means, that the instrument is not really the will of the testator. The will now in question was drawn by the same lawyer whom the testator had employed to draw all his previous wills, and in pursuance of instructions given by the testator in the absence of James, and we find no sufficient evidence to sustain the allegation that it was the result of undue influence. It is not for us to judge of the justice of the provisions of the will, or of the reasons which the testator had for discriminating as he did in favor of James. The character

of the provisions of a will may be considered in connection with other evidence in trying the question of undue influence, but is not in itself evidence of such influence.  However partial or unjust a testator may seem to have been in his testamentary dispositions, if the instrument propounded is actually his will, effect must be given to it.

The judgment should be affirmed with costs, payable out of the estate.

All concur; MILLER, J., absent.

Judgment affirmed.