## *In re* STEWART'S WILL.

(*Supreme Court, General Term, Third Department.* February 18, 1891.)

1. WILLS—PROBATE—CALLING SUBSCRIBING WITNESSES.
Under Code Civil Proc. N. Y. § 2618, providing that on application for the probate of a will "two, at least, of the subscribing witnesses must be produced and examined," if in the state, etc., as to the execution of the will, the proponent is not obliged to call both of the subscribing witnesses, the statute being satisfied if they are present and examined when the will is propounded.

2. SAME—TESTAMENTARY CAPACITY.
Mere weakness and failing memory of the testator are not sufficient to invalidate his will when it appears that he knew what he was about, expressed a particular desire that the will should be drawn by a person in whom he had great confidence, and disposed of his property without prompting.

This is an appeal from the decree of the surrogate of Sullivan county, refusing to admit to probate an instrument in writing, purporting to be the last will and testament of Robert Stewart, late of Sullivan county, deceased. The will was presented to the surrogate for probate upon the petition of the executrix and sole legatee named therein, who was the widow of the testator. Elizabeth Thomson, one of the subscribing witnesses to the will, and the only child of the testator and petitioner, filed objections to the probate, alleging as follows: (1) The said Robert Stewart was at the time of the execution of said instrument not of sound mind and memory, but was mentally incapable of making and executing a last will and testament. (2) The said Robert Stewart, at the time of executing said instrument, was under restraint and undue influence, and the execution of the same was procured by fraud and duress, to the prejudice of said Elizabeth Thomson. The case was heard before the special surrogate of Sullivan county. The case discloses that the testator was at the time of making the will about 80 years of age, and that he and his wife, an old lady, had left their farm, and were living in the house of their son-in-law, Andrew Thomson, husband of the contestant Elizabeth. The will was drawn by the surrogate of Sullivan county, at the solicitation of the testator, and to whom he gave directions as to the manner in which he desired his property to be disposed. The testimony of the draughtsman of the will upon that subject is as follows: "I said to Mr. Stewart, 'How do you want to leave your property?' and he said he wanted to protect the old woman. I then said, 'Do you want to give it to her absolutely?' and he replied, 'Give it all to her.'" After the will was drawn it was read to him, in the presence of his wife, Mrs. Thomson, the contestant, and her family, and testator said, "It is all right." And it was there executed by the testator, and witnessed by Mrs. Thomson and her daughter, at the request of the testator, although that request was made at the suggestion of the draughtsman of the will. There was evidence offered by the contestant tending to show that the testator's memory was in some degree impaired, but in most of the instances enumerated by the witnesses he was capable of recalling past events when his attention was directed specially to them. The opponent, in presenting his evidence, in the first instance failed to call and examine Mrs. Thomson, one of the subscribing witnesses, who appeared as the contestant, but before the case was finally submitted to the surrogate she was called in her own behalf as a witness, and

then swore that she was present at the time testator signed the will, and that she signed it at the same time as a witness. The execution was also duly proved by the other attesting witness and the draughtsman, and another daughter of contestant also swore to the testator's signing the will in the presence of the witnesses, and to their subscribing it as witnesses at his request.

Argued before LEARNED, P. J., and LANDON and MAYHAM, JJ.

*Peter E. Palen*, (*Arthur C. Butts*, of counsel,) for appellant. *Thornton C. Niven*, for respondent.

MAYHAM, J. The learned surrogate refused to admit the will to probate, on the ground that there was no sufficient legal proof given of the due execution and validity of said instrument as the last will and testament of said Robert Stewart; "and, further, by reason of the mental incompetency of the said Robert Stewart, that said instrument is utterly null and void, and invalid as and for the last will and testament of the said Robert Stewart, deceased."

We cannot agree with the learned surrogate upon either of these propositions. No questions seem to be raised that the formal statutory requisites to the valid execution of this will were not complied with substantially as required by statute, and, indeed, none could be. It was subscribed by the testator at the end thereof, and was, at the request of the testator, attested by two subscribing witnesses, in his presence, and in the presence of each other. But it is insisted by the learned counsel for the contestant that, as the proponent rested her case without calling both of the subscribing witnesses, she violated, or failed to comply with, the provisions of the statute, which requires that at least two of the subscribing witnesses, if they are attainable, shall be examined in order to the admission of a will to probate. The language of the statute relied upon, which is now enacted in the Code of Civil Procedure, is as follows: "Before a written will is admitted to probate, two, at least, of the subscribing witnesses must be produced and examined, if so many are within the state, and competent and able to testify." Code Civil Proc. § 2618. Under this provision of statute it is quite manifest that if Mrs. Thomson, who was within the state, and competent to testify, had not been called, the prohibition of the statute might have been effectual. But we are not called upon to determine that question here. Before the case was closed, she was called and examined, and hence the requirement of the statute in that respect was complied with, and while by her testimony she attacks the testamentary capacity of the testator she substantially concurs with the other witnesses in proving the due execution of the will. There is nothing in the statute making it obligatory on the proponent to call both of the subscribing witnesses, provided they are produced and examined in the case. "Both of the witnesses must be examined, but the will may be established, even in direct opposition to the testimony of both of them." *Trustees* v. *Calhoun*, 25 N. Y. 425; *Will of Cotterell*, 95 N. Y. 329. But it is insisted that the testator, at the time of the execution of this will, was not possessed of testamentary capacity, and for that reason the probate of the will was properly refused. One of the attesting witnesses, who is the daughter of the contestant, testifies that "his mind and memory was all right." She had known him all her life, noticed that his memory was failing, but his mind was sound; and her narration of facts and circumstances seemed to support her conclusion on that subject. The other subscribing witness, although the contestant, does not disclose by her testimony that the testator was impaired in his judgment or intellect, except as evidenced by failing memory. The testimony of William L. Thornton, who drew the will, when taken as a whole, shows that the testator had a clear appreciation of the business he was transacting. That he well understood whom he desired to make the beneficiary in his will, and why he desired to do so. He said, "He wanted to protect the old woman." The other witness present at the time of the execution of the will was Lizzie I. Thomson, another daugh-

ter of contestant, who swears that "I think grandfather's mind was all right at the time. Have never noticed anything out of the way. Have known grandfather ever since I can remember." She adds that his memory was failing. All of the witnesses called by the contestant speak of his failing memory, but none of them disclose a state of facts showing that the testator's mind or memory was so far enfeebled as that he was unable to comprehend the condition of his property, or to understand who were the proper objects of his bounty. When speaking upon that subject of making his will he insisted upon Judge Thornton drawing it, and when some one else was suggested he said: "No, no. I know Judge Thornton better. He is the one I want." When the will was read over to him, he said: "It is all right. It is just as I want it." It is quite manifest in this case that the testator possessed sufficient strength of mind and memory to make a valid testamentary disposition of his property. He had sufficient active memory to realize that he had a wife with whom he had lived for about 50 years, whom he ought to protect. He was capable of appreciating the importance of the act in which he was about to engage, and to make his own selection of a draughtsman. He could without prompting as to the person state to whom he desired to give his property. In short, he fulfilled all the requirements prescribed by the court of appeals in that leading and well-considered case of *Delafield* v. *Parish*, 25 N. Y. 9, where the court says: "He must have sufficient active memory to collect in his mind, without prompting, the particulars or elements of that business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and to be able to form some rational judgment in relation to them." The fact that an aged person is forgetful does not *per se* establish want of testamentary capacity so long as the testator is not so far bereft of reason as not to have a just appreciation of the nature of the business and the material objects of his bounty. Here the emotions manifested by the testator showed that he regarded this as one of the most important acts of his life. On the whole case, on the proof as it stands, we think the decree of the surrogate, refusing to admit this will to probate, should not be sustained. Decree reversed. Order for trial at court on issues. Issues and order to be settled by MAYHAM, J. All concur.