### In re STEWART'S WILL.

#### (Supreme Court, General Term, Second Department. July 2, 1891.)

WILLS—CAPACITY OF TESTATOR—EVIDENCE.

　　Testator executed a will in 1881, by which he left a small annuity of $100 to his housekeeper, whom he afterwards married. After the marriage, testator executed a second will, leaving one-fourth of his estate to his wife in lieu of dower, and putting the share of one of his sons in the hands of trustees. The subscribing witnesses testified that testator, who was 84 years of age, was in his right mind when he executed the will, that it was read over to him slowly, and that he declared that it was exactly what he wanted. The testimony of contestant's witnesses showed instances of loss of memory, slow comprehension, and slovenliness in dress, but no incoherent or irrational conversation on the part of testator. Proponents' witnesses showed that testator attended to his own business, made loans, collected money, examined houses, and made repairs thereon. *Held,* that a decree of the surrogate refusing probate of the will should be reversed, and the case sent to a jury. Reversing 10 N. Y. Supp. 744.

Appeal from surrogate's court, Kings county.

Proceedings for the probate of the last will of James Stewart, deceased. The will was propounded by testator's widow, Eleanor Stewart, and James R. Aliben, and contested by James C. Stewart, Gilla Alma Gates, and others, children of the testator. From a decree of the surrogate refusing probate of the will, proponents appeal.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*W. B. Maben,* (*Geo. E. Reynolds,* of counsel,) for appellants. *William D. Veeder* and *Daniel W. Notthup,* for respondents.

BARNARD, P. J. On the 12th of March, 1887, the deceased made a will, and subsequently two codicils thereto. This will of 1887 contained a radical change in the disposition of testator's property, and the question litigated on the trial was whether the testator had capacity to execute the same, and the codicils thereto. By the former will and codicil the property had been divided equally between the testator's three children. These papers were executed in 1881 and 1884. Between the dates of the codicils made in 1884 and the will of 1887, the testator had married Eleanor Ely, who had been provided for by a small annuity in the old will, and by the will of 1887 she takes one-fourth of the estate, some $75,000, in lieu of dower. The share of one of the sons is put in the hands of trustees for his benefit for life, with remainder to his children. The surrogate found that the testator had not sufficient capacity to execute the will of 1887, and the codicils thereto, but admitted his will of 1881, and the codicils thereto of 1884. The widow appeals. The will of 1887

was executed in the presence of Paul H. Kretzschmar and Gustavus R. Cooper. These witnesses were both called and examined. One had known the testator 12 years, and the other for 20 years. The testator was 84 years of age. The will was read over slowly to him, and he said to the witnesses that it was exactly as he wanted it. He then signed the instrument, and declared it to be his last will, and requested the witnesses to sign it as such, which they did in his presence, and in the presence of each other. James R. Aliben, the attorney for the testator, was present at the time; also Mrs. Stewart, the widow. The codicils were executed in the following year, 1888, in the presence of John Murphy and C. B. Skiff. Each of these witnesses were called and testified to a full and apparently free and capable execution of the codicils. A large number of witnesses were called by each party. The contestants show instances of loss of memory not at all unusual for an old man entirely rational; instances of repetition; instances where the comprehension of the testator was not so quick as is usual with young men. His dress was not as neat and well ordered as it should be. Many of the contestants' witnesses say there was nothing incoherent or disconnected in the testator; and all, or nearly all, say that the conversations were about business which he continued to do for himself until after the last codicil. The witnesses called by the proponents show an entirely rational and understanding testator who did his own business; made loans, collected money, examined houses, and made repairs thereon. He remembered names and persons of old acquaintances whom he had not seen for a considerable time; he remembered engagements. He understood his business, and knew what he wished to accomplish. The evidence is such that the decree of the surrogate should be reversed, and issues properly framed, and sent to a jury of Kings county. The question of costs to await the disposition of the trial by jury. All concur.