directing payment of a portion of the estate to Mary Eliza Clanny and Eleanor Rockfellow, (formerly Clanny.)    Modified.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Stitt & Phillips*, (*Danl. G. Rollins*, of counsel,) for appellants.    *William D. Veeder*, for respondents.

BARNARD, P. J.    The testator, William J. Logan, died, leaving real and personal estate.    By the will certain real estate and personal property is given to the widow in lieu of dower.    A money legacy of $8,000 is given to a nephew, and a legacy of a similiar amount is given to four sisters.    By the fifth clause of the will there is a gift of a life-estate in a similar sum to another sister, Jane Clanny, with a gift over; after the end of the life-estate, to the two children of Jane Clanny, Eleanor and Jane Eliza Clanny.    All these legacies are made payable out of the personal estate.    By the thirteenth clause of the will, the rest, residue, and remainder of the estate to be sold, and, after paying the several legacies in full, to divide such remaining sum, if there should be any, "to and among the legatees mentioned in this, my will, to whom I hereby give and bequeath the same, share and share alike."    The question is whether the Jane Clanny family take their share in this residue as only one.    There is nothing in the will from which it can be inferred that the testator intended to treat the share to be given to his sister Jane in any different way from the other legacies, except that Jane's share was given for life, with remainder to her children, and the other shares were given absolutely.    Strictly speaking, Jane and each of her children were legatees, but not such under the words and meaning of the will.    In the same clause, (thirteenth,) the testator directs the payment of the "several legacies," and of the "aforesaid legacies," which words only cover the amount of $8,000 to Jane; and then he speaks of his division among the legatees mentioned in the will.    The evident intent is that the Jane Clanny share is one legacy, and she is the only legatee intended to be embraced in this first residuary clause.    The judgment should therefore be so modified as to divide the estate in seven parts, and directing that Jane Clanny take the one-seventh thereof.    The executor has no right to keep this residue for Mrs. Clanny, as the trust is as to the $8,000 only.    The children have no right to this residue, as none is given them in any fund except the remnant of the $8,000.    Judgment modified, with costs to all parties out of the estate.    All concur.

---

*In re* MERRIAM'S WILL.

(*Supreme Court, General Term, Second Department.    December 14, 1891.*)

1. WILLS—VALIDITY OF EXECUTION—CREDIBILITY OF ATTESTING WITNESS.

   A lawyer who drew a will, and was one of the attesting witnesses, testified that it was executed with all the formalities required by the statute.    The other witness, a law student, testified that he did not attest the will at testator's request nor in his presence, but at the request of the draughtsman.    The attestation clause stated the contrary, but witness said that he did not read the clause, the execution of the will being of no concern to him, whether right or wrong.    *Held*, that the testimony of the law student was properly discredited, and the will admitted to probate.

2. SAME—COMPETENCY OF TESTATOR—EVIDENCE.

   Testator was a college graduate, and, though a man of large property, a teacher in the common schools.    He managed his property without aid, and kept it from depreciation.    His next of kin was a sister, who had a large estate, and he had declared his intention not to leave her his property, being dissatisfied with the provision made for her by his father's will.    Testator had a habit of making wills in favor of young school-girls whom he fancied, and was childish in his tastes and occupations.    His memory was defective, but not unusually so, and there was want of discipline in his school, but he could make clever political addresses.    Testator devised his entire estate to the United States government.    *Held*, that the evidence was insufficient to show that he was incompetent to make a valid disposition of his estate.

Appeal from surrogate's court, Suffolk county.

Proceedings for the probate of the will of William W. Merriam, deceased. Testator devised his entire estate to the "government of the United States of America." From a decree admitting the will to probate Eleanor S. Woods and others appeal. Affirmed.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Timothy M. Griffing* and *George D. Robinson*, for appellants. *Jesse L. Johnson*, for the United States, respondent. *George F. Stackpole*, for the executor.

BARNARD, P. J. The deceased was a resident of Brooklyn, Suffolk county, and died there in January, 1889, at a little over 50 years of age. He left a will, which was admitted to probate by the surrogate of Suffolk county, executed in May, 1883. The next of kin and heirs at law appeal from a decree of the surrogate, and allege that the will was not executed according to the requirements of the statute, and that the testator was not of sound mind and memory, and therefore incapable of making a will. The will was executed by the testator in the presence of B. K. Payne. Payne drew the will upon the instruction of the testator. The attestation clause is full and complete, embodying all the statute requirements. Mr. Payne testifies that the will was either read over by the testator or by the witness, and that testator declared it to be his last will, and requested Mr. Payne and Mr. Linnen to be witnesses; that the testator signed the instrument in their presence, and that the witnesses signed as such in his presence, and in the presence of each other. Linnen testifies that he did not see the testator sign the paper; that he did not sign as an attesting witness at testator's request, but at the request of Payne, and in another room from that in which testator was at the time. The surrogate's finding that the will was properly executed is supported by the evidence. Payne was a lawyer, used and accustomed to the requirements of the execution of wills. The attestation clause states the facts contrary to Linnen's recollection. Linnen was a law student; had no charge of the execution of the will; and has signed a certificate which is at war with his testimony. Linnen knew of the requirements of the law as to the execution of wills, and signed the attestation clause, as he says, without reading it; that the execution was of no concern to him, whether it was done right or wrong; and that some six years thereafter, and after testator's death, he seems first to recall the fact that the will was not properly executed. The surrogate's finding is upheld on this point of the formal execution of the will. The evidence as to the mental condition of the testator shows him to have been very eccentric. He was a graduate of Williams College, and had been a teacher in the common schools subsequent to leaving college. He was a man of large property, and managed it unaided, and without suffering waste or depreciation, so long as he lived. In many respects he was childish in his tastes and occupation. He was in the habit of making wills. He would take a childish fancy to some young girl, and make a will in her favor. These legatees were, it seems, easily supplanted by a new fancy, or by some sudden change on the part of testator, and the result would be a new will. The testator was subject to complete changes in his political beliefs. He was capable of writing an address called "happy" or "clever" by those who heard it; he could make political addresses. There was a lack of discipline in his school. His memory was at times somewhat defective, but not unusually so. The evidence fails to show that there ever was a time when he did not understand his affairs, and when he did not know the effects of his acts. He gave his reason always why he did not want his next of kin to take. He had neither father, mother, wife, nor child. He was dissatisfied with his sister and step-mother in respect to the distribution of his father's will. He invented the plan of giving his property to the general government, and directed

his lawyer to make his intent effective by will. His sister had plenty of money, and the testator knew that they did not need his property. The greatest peculiarity in the deceased, after all, was that he felt called on to teach, which is quite unusual to a man who had so large a property. His girl legatees were generally, if not always, school-girls of tender years, and his selection was made without any other motive than a wish to attach them to him practically as a child of his own. The evidence, therefore, fails to show the testator incapable of making a will. The will was freely made, without suggestion and without restraint. It was made by one who knew the condition of his property, and the scope, meaning, and effect of his will, and the decree should therefore be affirmed, with costs. *Horn* v. *Pullman*, 72 N. Y. 270; *Delafield* v. *Parish*, 25 N. Y. 9. All concur.