### In re PHALEN'S WILL.

#### (Supreme Court, General Term, First Department. June 3, 1892.)

WILLS—PETITION TO REVOKE—UNDUE INFLUENCE—EVIDENCE.

On a contest of a will on the ground that its execution was procured by undue influence exercised by a daughter of the testator, it appeared that the instrument was prepared in accordance with instructions of the testator; that it was read to him before he signed it, and was executed in the presence of the subscribing witnesses only; and there was no evidence that the daughter knew its execution was contemplated before it was done. *Held*, that no undue influence was shown, though it was in evidence that the daughter lived in an adjoining house of her father, with an opportunity of influencing him.

Appeal from surrogate's court, New York county.

Petition by Charles James Phalen for the revocation of the probate of the will of James Phalen, deceased. From a decree dismissing the petition, petitioner appeals. Affirmed.

For former decisions on the application to revoke probate, see 4 N. Y. Supp. 408, affirming 3 N. Y. Supp. 205. For proceeding by Charles James Phalen to compel the executors to make a payment to him on account of a legacy, see 6 N. Y. Supp. 252, affirming 5 N. Y. Supp. 43.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Edward Sandford*, (*C. H. Woodruff*, of counsel,) for appellant. *John J. Macklin* and *E. W. Sheldon*, for respondent.

VAN BRUNT, P. J. James Phalen, a citizen of New York, but a resident of Paris, died there in January, 1887, leaving a widow, two daughters, and one son, the appellant. Three days before he died he executed a codicil to his will, which had been made in 1882, revoking the provision therein giving to his son absolutely an equal portion with his sisters, and placing his share in the hands of trustees for his life, with remainder to his heirs. An absolute devise to his son of one of the family dwelling houses in Paris, however, was not revoked. It is claimed upon the part of the appellant that this codicil was caused to be made through the undue influence, fraud, and deceit of the two sisters of the petitioner and the husband of one of them, practiced upon the testator; and that, although no direct proof of undue influence has been adduced, yet the motive of the persons benefited by the change, the opportunity for influencing the testator, and its accomplishment, have been established by the evidence; and that it is evident from the proof that the testator, from 1882 to 1887, intended that his only son should enjoy his property out and out, without any restrictions whatever. It appears that between 1882 and 1887 the testator had drawn six codicils to his will without in the least affecting the division of the rest and residue of the property between his children; the fifth codicil revoking the appointment of the appellant as executor in November, 1886, the reason for such action being said to be on account of his health. The first and last codicils were executed according to the laws of the state of New York, and the intervening codicils were holographic in form. ,

The claim is made that the motive for securing a change in the testator's will upon the part of the sisters was to augment their expectant estates; that at this time their brother was 40 years of age, married in 1873, separated from his wife, and childless; that by his father's will he had the right to dispose of his share as he chose in his lifetime or by will, and that by the change made this right was taken away; that the opportunity to strongly affect the

testator's mind existed from the fact of the daughters living with their father in contiguous connecting houses in Paris, while their brother was in Switzerland, and his father had not seen him since 1885; and that one of such daughters was her father's active agent and adviser in family matters, and it is claimed in matters which resulted in this change in his will, (in respect to which latter assertion we fail to find any supporting proof;) and that a scheme was entered into between these sisters and the husband of one of them to influence the testator to warp his judgment, and finally deceive him as to his son's mental condition. That the habits of the appellant had at times been bad, and such as made him unfit for the management of any property committed to his care, seems to be established by the evidence beyond doubt. But it is claimed that outside of these habits a studious effort was made to impress upon the father the idea that the appellant was not competent to manage his own affairs, and that stories of his extravagant and bad habits were incessantly retailed to his father and mother. And a large part of the testimony is taken up by evidence in reference to proceedings which were taken for the confinement of the appellant, because of his physical and mental condition, in an asylum at St. Urbain.

It is conceded upon the part of the appellant that these claimed peculiarities in his conduct and habits had some foundation in fact; and that the life that he led, and his bodily infirmities and mental distress and despondency, together with habits of drink, had impaired his constitution, and given concern to his physician, of all which the father was well aware. But it is urged that, although confinement in a private hospital for treatment was prescribed by the physician, confinement in a lunatic asylum was entirely unnecessary, and unwarranted by his condition. The respondents claim that this treatment was directed by his father, and was essential to his restoration from a state of otherwise hopeless alcoholism, and resulted in great benefit to his mental and physical health. Whatever may be the conclusion arrived at from an examination of the testimony which has been offered upon the part of the appellant, there seems to be a complete absence of proof tending to show that this action was taken by the sister of the appellant for the purpose of influencing the father in reference to the provisions of his will, or that she attempted in any manner to exercise any such influence. The evidence shows that the codicil was prepared by a Mr. Walker, the consul general of the United States resident at Paris, in accordance with instructions received directly from the testator; that it was read over to the testator before he signed it; and that it was executed in the presence of no one but the subscribing witnesses; and there is no evidence that the sisters of the appellant ever suggested, or even knew of, the intended execution of the codicil until after it was done. There seems to be an absence of proof to support the claim that the codicil was not, under the condition of affairs which it is admitted the evidence establishes, such as a testator would be likely to make, or that it was unnatural in respect to its provisions. It is not enough that the opportunity to exert influence may be offered. There must be proof that such influence was exerted, and that the codicil was due, not to influence, but to undue influence; that is, influence so strong that the will of the testator was thereby overcome. As has been said in *Re Martin*, 98 N. Y. 193: "The case, then, is one where the testatrix had testamentary capacity, a present knowledge of the contents of the will, and where at its execution she was surrounded by all the guards which the statute has prescribed to prevent fraud and imposition. A will executed under those circumstances can be avoided only by influence amounting to fraud or coercion, and proof that it was obtained by this coercion. The burden of proving it is on the party who makes the allegation." We think, therefore, the case is utterly devoid of any proof which would justify this court in coming to a different conclusion from that reached by the learned surrogate. The decree should be affirmed, with costs.

All concur.