Mayham, P. J.
The formal objections made to the probate of this will to the surrogate were:
First. That said alleged will is not the last will of said Roxalana Williams.
Second. That said Roxalana did not sign or execute the same.
Third. That said Roxalana Williams at the time of the pretended execution of said will was not capable by reason of mental incapacity to make a will.
Fourth. That said alleged will was produced by reason of undue influence exercised upon said Roxalana Williams, without which she would not have executed the same.
The case discloses that the alleged testatrix was a widow about eighty-two years of age at the time of the execution of the instrument, in somewhat feeble health, and for some years previous to the alleged execution of the will too deaf to hear what was said to her, and was accustomed to converse by use of a tablet or slate on which those conversing with her wrote their communications, which she answered orally.
She had for some years resided with her brother, who was a bachelor and died of softening of the brain, intestate, leaving his. sister Roxalana Williams his next of kin, and the sole inheritor of his property, which consisted of a farm worth about $5,000 and $20,000 worth of personal property,
Mrs. Williams before inheriting her brother’s estate was worth in her own right about $5,'000. At the time of making this alleged will her nearest relatives and only next of kin were three cousins residing in the state of Connecticut, between whom and Roxalana Williams no intimate social relations existed at the time of making the alleged will or at any time previous thereto.
These kinsfolk were not named in the will and the principal *793 beneficiary named therein was a Mrs. Harriet Carpenter, who for many years had been an intimate friend of the testatrix, and who, not in any wise loin to her, had been an adopted daughter of her deceased sister and had been reared and educated by her, and, as testatrix claimed, had for years rendered her valuable services and kindnesses which she by her gratified expressions seemed highly to prize and appreciate, calling her on many occasions her main stay.
The proof shows that Norman Carpenter, husband of Harriet Carpenter, the principal beneficiaiy, called on the draftsman of the will and informed him that Mrs. Williams desired him to do some writing for her, and that the draftsman pursuant to such information called on the testatrix, who informed him that she wanted him to draw her will, which he agreed to do, and a short time thereafter Mrs. Carpenter brought to and left with him written instructions in her own handwriting from which he drew the will.
The will was duly executed with all statutory requirements and witnessed.by the draftsman and his wife with whom it was left until produced for probate.
The surrogate in an able and exhaustive opinion sustained the will and admitted it to probate, and the contestant, who is one of the next of kin of the testatrix, appeals.
The first point urged on this appeal is that the paper offered for and allowed for probate is not the will of the testatrix, and this contention is sought to be maintained on the ground that by the will the testatrix disinherits all of her next of kin and gives all of her property to strangers ; an unusual and unnatural act, and one which suggests either that the paper was never executed by her, or if signed by her at all, was the result of fraud or undue influence.
Upon this subject attention is first directed to the signature of the alleged testatrix to the paper, and a large amount of evidence was taken before the surrogate, consisting of the testimony of the ■subscribing witnesses and of experts offered by both parties, and ■exhibits consisting of genuine standards of the handwriting and ■signature of Mrs. Williams, between which and the signature in dispute comparison was made by the expert witnesses in their testimony, and the same were laid before the surrogate for his inspection, and produced and exhibited to the court on this appeal. Each party produced on the trial expert witnesses justly celebrated in their profession, claiming to have great skill and experience, and exhibiting a zeal and fidelity to their employers worthy of their employment, who unhesitatingly testified to the genuineness of this ¡signature on one side, and to the forgery and simulation of the same on the other; and the surrogate and this court would be puzzled by the unanswered question, “ who shall decide when doctors disagree ?” but for the testimony of the subscribing witnesses, who unequivocally swear to having seen the name written by Mrs. Williams.
It is quite true that the unusual manner in which the name is divided at once attracts attention.
*794 But the argument from that is quite as strong in favor of the genuineness of the signature as against it It would be most unnatural for a party seeking to commit a forgery to adopt a signature unlike the genuine. Forgeries are usually committed by attempted simulation and fac similes, and not by the adoption of a method unlike the usual signature of the one against whom the forgery is committed.
It would seem from the testimony, and the genuine signatures of Mrs. Williams used on the trial, that her usual way of writing her name was in one word, “ Roxalana,” and not as it appears on this instrument, “ Roxa Lana.” But several genuine signatures were introduced where she had written her name “Roxa L.,” and her linen and silver marked years before the time of the alleged execution of this instrument were marked R. L. W., and for her maiden name, R. L. H., her name before marriage being “Hall.”
From an inspection of the exhibits we are unable to determine that this signature to the alleged will is forged or simulated, and we think the weight of evidence is in favor of its genuineness, and must therefore agree with the learned surrogate on this branch of the case.
The questions of fraud and undue influence raised by the contestant in the court below, and so ably and exhaustively discussed by the learned counsel for the appellant on this appeal, have been carefully examined by us, and seem so completely anticipated, and effectually and properly disposed of by the learned surrogate in pronouncing his opinion in this case, that we venture to adopt it in haec verba as decisive of this branch of the case, giving him credit for the same. The learned surrogate says :
“It is urged that Mrs. Williams was a person of great age,, eighty-two years old, somewhat feeble in health, shut off from ready communication with the world by reason of her loss of hearing, residing with her aged brother who was himself an invalid,, and by reason of his malady (softening of the brain) incapable of advising with her; that the memorandum for the will was prepared by Mrs. Carpenter, the principal beneficiary, without the-presence or knowledge of any other person, so far as appears; that there existed between the deceased and the principal beneficiary (as she admits and claims) the most tender relations, amounting to those between mother and daughter, which had existed for many years, and grown closer as time progressed; that such beneficiary was not a relative, either by blood or affinity; that the blood relations (heirs at law and next of kin of said deceased) were not even mentioned in her will, although the deceased had frequently said she expected a portion of her property would go to them; and finally that Mrs. Williams denied, as alleged, after making of said instrument, on one or more occasions, that she had made a will; that Mrs. Carpenter had also on several occasions, made the same denial.
“ These circumstances, it is claimed by the contestant, establish that the alleged will, if executed, was the result of moral coercion amounting to fraud. Upon the other hand the proponent relies, upon the general intelligence and capacity of the deceased, the *795 absence of proof of impaired memory or of the exhibition of mental weakness or loss of will power, her full knowledge of her property and of those upon whom she desired to bestow her bounty, the deliberation and care with which the act was done, the affection which prompted the act, and the absence of all proof of fraud and imposition, to repel any and all presumptions of undue influence.
“ Cases of this class have been before the courts so frequently that certain general rules have been established by which evidence of the character adduced by contestant in this case should be weighed and applied; the courts have also decided what kind and amount of countervailing evidence will avail to repel the presumption of fraud or undue influence raised by such evidence. The general rule as to capacity and ability of persons to dispose of their property is as follows: “ Every person of sound mind, acting with full knowledge of his affairs; competent to understand his relation to those whom he choses to benefit, may bestow his bounty as he likes, although the disposition may appear, and in fact be, unjust and inequitable. Clapp v. Fullerton, 34 N. Y., 190; Seguine v. Seguine, 4 Abb. Ct. App. Dec., 191; Coit v. Patchen, 77 N. Y., 533; Hollis v. Drew Theo. Sem., 95 id., 166. The fact that a will disinherits testator’s kindred is not alone evidence of undue influence; nor is the fact that a. memorandum for the will is prepared by the person who is largely benefited under the will and who is active in procuring its execution. Matter of Smith, 95 N. Y., 516; Matter of Martin, 98 id., 193; La Bau v. Vanderbilt, 3 Bedf., 384; Cudney v. Cudney, 68 N. Y., 148.
“ Neither is the fact that the will is not in accordance with testator’s previously expressed intention, although it may have an important bearing in connection with other facts, but without such facts of a pertinent and forcible character a change in purpose of making a testamentary disposition does not invalidate the will.”
Without quoting further from the opinion of the learned surrogate, we think the authorities cited by him abundantly establish, when applied to the facts proved in this case, that the will was the free and voluntary act of the testatrix, and that the contestant has failed to establish by any affirmative evidence undue influence such as would invalidate the same. Intimacy between the testatrix and the beneficiary cannot be regarded as an element tending to establish undue influence. Nor do acts of kindness and marked attention on the part of the beneficiary amount in themselves to evidence of undue influence.
To invalidate a will on the ground of undue influence there must be affirmative evidence of facts from which such influence is to be inferred. It is not sufficient to show that the party benefited by the will had the motive and opportunity to exert such influence; there must be evidence that he did exert it Cudney v. Cudney, 68 N. Y., 148. Undue influence must be such as is exercised by coercion, imposition or fraud, and not such as arises from gratitude, affection, confidence and esteem, unless it be proved *796 that a weak minded or deluded testator has been misled and deceived by artifice or fraud. We see nothing in this case that justifies the conclusion that this will was the result of undue influence or fraud. The only remaining question is, whether the surrogate erred in the receipt and rejection of evidence to the prejudice of contestant to such an extent as to justify a reversal of the decree
The well settled rule in reference to decrees of surrogates is,, that when testimony is improperly received or rejected by a surrogate, it is not sufficient ground for the reversal of a decree unless it appears to the appellate court that the party against whom the evidence is received or rejected is necessarily prejudiced thereby. Code Civ. Pro., § 2545; Loder v. Whelpley, 111 N. Y., 239 19 St. Rep., 631; Matter of Will of Smith, 95 N. Y., 517. The rule laid down in the last case cited, that when incompetent evidence has been received or competent evidence rejected, and it. appears that the same was important and material and might have affected the result, and the court on review cannot say that notwithstanding the error the judgment is right, and the party excepting was necessarily prejudiced, the judgment should be reversed, and the converse of this proposition is, under the section above referred to, equally true; if the error does not affect the-determination on the merits the decree should not be reversed.
We have carefully examined all the rulings of the surrogate upon the receipt and rejection of evidence to which exceptions were taken and we see no error which, when tested by the above rule,, would justify the reversal of the decree in this case.
The decree is, therefore, affirmed, with costs.
Putnam and Herrick, JJ., concur.

 Affirming 40 St. Rep., 356.