## Matter of MABIE.

(Surrogate's Court — Rockland County, September, 1893.)

Upon the issue of testamentary capacity of testatrix, eighty years of age, it appeared that her memory was impaired at the time of the making of the will; she would frequently hide or misplace articles of food, clothing and other things about her house, and be unable to state where they were or have any recollection of them; she would at times fail to recollect or recognize acquaintances, and address persons whom she knew well by wrong names; there was evidence of eccentricities and peculiarities in her actions, conduct and sayings; she became less tidy in her dress and in conducting her household duties, and became in a measure incapable of doing her work in her usual manner, and finally she was taken to the home of a niece, whose husband was the sole executor of the will, with whom she lived until her death. It also appeared that she had sufficient capacity, where an ordinary business matter was present to her mind, to understand, consider and dispose of the same intelligently and knowingly; she had sufficient memory to collect in her mind, without prompting, the particulars or elements of the business transacted, and to hold them in her mind a sufficient length of time to perceive their obvious relations to each other, and be able to form some rational judgment in relation to them. *Held*, that, within the meaning and intent of the Statute of Wills, she was a person of sound mind and memory, and competent to dispose of her estate by will.

Testatrix, a widow, died leaving an estate of between $10,000 and $12,000. No children, or descendants of any, survived her. At the time of making her last will and testament and at her death, she lived with a niece and namesake, to whom she bequeathed $6,000; the husband of the niece, who was the business agent of testatrix and managed her property, was made sole executor and residuary legatee. Three sisters and two brothers received money legacies to the amount of $3,500. The lawyer who drew the will was alone with testatrix in the house about half an hour, during which time the testatrix gave him instructions as to the preparation of her will and its provisions. The will was prepared, the lawyer took it to the house, went into a room with testatrix alone and closed the door; he read the will to her and asked her if it was correct; she said it was; the lawyer's son was called in as a subscribing witness, and the will was duly executed. Both the niece and her husband testified that they knew nothing of the will having been made, or of its contents, until some time after the death of testatrix. *Held*, that, as there was no evidence of any act, word or movement of either the niece or her husband to secure or obtain the making of the will at all, and especially not as to any of its provisions, probate thereof should not be refused on the ground that its execution was brought about by undue influence and fraud.

APPLICATION for probate of will. The opinion states the case.

*A. & A. X. Fallon* (*Abram A. Demarest*, of counsel), for proponent.

*Arthur S. Tompkins*, for contestants.

WEIANT, S. Mary Mabie, the testatrix, made and executed the instrument, the validity of which is contested herein, on the 3d day of January, 1887. She died on the 3d day of October, 1891. She was not the owner of any realty, and left an estate of the value of between $10,000 and $12,000.

By this writing, she first directed that all her debts and funeral expenses should be paid. *Secondly*, she bequeathed to her sister, Ann Brooks, the sum of $1,000, and certain articles of household furniture. *Thirdly*, she bequeathed to her sister, Phebe Harris, the sum of $1,000, and also certain articles of household goods and personal apparel. *Fourthly*, she gave to her sister, Matilda Moore, the sum of $500 and a "parlor settee." *Fifthly*, she bequeathed to her brother, John Westervelt, the sum of $700. *Sixthly*, she gave to her brother, Jesse Westervelt, the sum of $300 and all the wearing apparel of her deceased husband, Cornelius P. Mabie. *Seventhly*, she bequeaths to her niece and namesake, Mary A. Blauvelt, wife of Abram Blauvelt, the sum of $6,000 and the articles of household furniture and wearing apparel, not by her will otherwise bequeathed. And, *eighthly*, she bequeathed and devised all the rest, residue and remainder of her estate, real and personal, to Abram Blauvelt, the husband of her said niece, Mary A. Blauvelt. She appointed said Abram Blauvelt sole executor of her said will. The testatrix was about eighty years of age at the time of making this will, and left no children or descendants of any. Her husband above named had died in April, 1886. The brothers and sisters named in the will were her nearest relatives. She and her husband had always resided together at the place of their residence at the time of his death, or in that vicinity. For

about six months after Mr. Mabie's death the testatrix continued her residence at the homestead occupied at the time of his death, and then on Thanksgiving day, in November, 1886, she changed her home to that of her niece, Mary A. Blauvelt, and her husband, Abram Blauvelt, at Piermont, a distance of two or three miles from her said residence. She continued to reside with said niece and her husband during the remainder of her life, and died at their home on the date above specified. While residing with her said niece, at Piermont aforesaid, she executed this will in question, in due form of law. The due execution of the same is not challenged, but the contestants object to the admission of the will to probate on the grounds that the testatrix was of unsound mind at the time of the execution thereof, and not having sufficient capacity of mind to be legally qualified to make the same, and that the same was brought about by undue influence and fraud, and was not her free act and deed.

Upon these two questions a considerable mass of testimony was taken, covering about 1,400 pages, beside the documentary evidence, and detailing facts and circumstances bearing chiefly upon the mode of life of the testratrix, and her condition mentally and physically.

After a careful and deliberate consideration of this evidence and of all the facts and circumstances, I have reached the conclusion that this will must be admitted to probate.

The proof shows the facts above collated and as to which there is no dispute.

While the testatrix was residing at Piermont, with her said niece and her husband, shortly prior to January 3, 1887, word was left at the residence of Andrew Fallon, a lawyer and near resident, through which he was requested to call at Mr. Blauvelt's house. He answered this request and saw Mrs. Mabie. He was alone with her in the house about twenty minutes or half an hour, and during which time she gave him instructions as to the preparation of her will and the provisions thereof. Upon the completion of the interview Mr. Fallon informed her that as soon as he had the will prepared he

_____

would come with it, and bring his son as a witness if she
assented to it.

Mr. Fallon prepared the will accordingly and called upon
her at Mr. Blauvelt's house with the will on January 3, 1887,
and took his son with him.

He then upon entering the house went into a room with
Mrs. Mabie alone, and closed the door. Both sat down, and
Mr. Fallon read the will to her. He asked her if that was
correct. She said it was. He laid the will upon the table and
told her he would call his son in. He did so, and again closed
the room door. Then followed the execution of this will by
the testatrix before the two subscribing witnesses alone, in full
compliance with the requirements of the statute as to the exe-
cution of wills.

Mr. Fallon then asked the testatrix what she wanted done
with the will, and she answered that she desired him to keep
it. He then placed it in a sealed envelope and took it to his
office, where it remained until produced in this proceeding.

The testimony of these subscribing witnesses contains the
usual other statement of facts as to the sound mind, memory
and understanding of the testatrix, and that she was under no
restraint.

It thus appears that the testatrix duly executed this writing
as her last will and testament, fully complied with the legal
requirements; that she was in proper condition mentally to
dispose of her estate; and that she was free and unrestrained
in so doing.

It also appears from that testimony that the testatrix had
testamentary capacity, and a present knowledge of the contents
of the will, and a comprehension of the act of making the same.

It then rested upon the contestants to meet this condition of
the case and show that either the one or the other of the
objections interposed was established. As to the restraint or
undue influence upon the testatrix there is no direct evidence.
Nor is there sufficient from inference, if any such there be,
upon which the finding may be rested that she was under
undue restraint or influence when she made this will.

If there is testamentary capacity and a present knowledge of the contents of the will, and the will is executed pursuant to the formalities prescribed by the statute, it can only be avoided by proof of influence amounting to force or coercion, and the burden is on the party making the allegation that the testatrix was imposed upon, or overcome by the acts or practices of the beneficiary. *Matter of Martin*, 98 N. Y. 193; *Loder* v. *Whelpley*, 111 id. 239; *Matter of Williams*, 19 N. Y. Supp. 778, and cases there cited.

And this kind of influence will not generally be presumed. *Marx* v. *McGlynn*, 88 N. Y. 357. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it. *Cudney* v. *Cudney*, 68 N. Y. 148; *Matter of Smith*, 3 N. Y. St. Repr. 137; *Matter of Clausmann*, 9 id. 182; *Matter of Thorne*, 7 N. Y. Supp. 198; *Children's Aid Society* v. *Loveridge*, 70 N. Y. 387–394; *Matter of Phalen*, 19 N. Y. Supp. 358.

In *Matter of Phalen*, 19 N. Y. Supp. 358, which is a decision of the Supreme Court at General Term in the first department, and which case was a contest of a will or codicil thereto on the ground that its execution was procured by undue influence exercised by a daughter of the testator, it appeared that the instrument was prepared in accordance with the instructions of the testator; that it was read to him before he signed it, and was executed in the presence of the subscribing witnesses only, and there was no evidence that the daughter knew that its execution was contemplated before it was done, it was held that no undue influence was shown, though it was in evidence that the daughter lived in an adjoining house of her father, with an opportunity to influence him. The facts in this case are quite in line with those in that cause, and both Mr. and Mrs. Blauvelt testify that they knew nothing of this will having been made or of its contents until some time after the death of the testatrix.

Nor is an unequal distribution of a testator's estate, as the contestants claim, of itself sufficient to justify the conclusion

or inference of undue influence. *Matter of White*, 15 N. Y. St. Repr. 753; *Matter of Tracy*, 11 id. 103.

Inequality of a will alone is not sufficient to establish undue influence. *Matter of Lasak*, 10 N. Y. Supp. 844. It is the rule that a testator may make such disposition of his property as he desires, although the disposition may appear unjust and inequitable, or even absurd to others. *Potter* v. *McAlpine*, 3 Dem. 108; *Matter of Mondorf*, 110 N. Y. 450; *Horn* v. *Pullman*, 72 id. 269; *Matter of Williams*, 19 N. Y. Supp. 778, and cases there cited.

The change from the prior declared intention of the executrix, to divide her property equally between her sisters and brothers, to the disposition in this will, may have seemed well to her. It may have been unjust towards her sisters and brothers, but that furnishes no ground in law for disturbing this will. *Horn* v. *Pullman*, 72 N. Y. 278; *Children's Aid Society* v. *Loveridge*, 70 id. 387; *Matter of Williams*, 19 N. Y. Supp. 778.

In the consideration of this question of undue influence, I have kept in mind the confidential and close relation that existed between the testatrix and Mr. and Mrs. Blauvelt. Mrs. Mabie was at all times near them or some member of their household, and at all times accessible to their influence and persuasion. Mr. Blauvelt was her business agent and managed her property, and transacted her matters in the way of purchases and disbursements. She evidently intrusted all such matters to his care and attention, and paid him ten dollars per week throughout the whole period of her living with him for her board and maintenance.

These relations of these legatees and devisees were, therefore, such as require close scrutiny of their conduct towards, treatment of, and dealings with the testatrix, to see whether under such favorable circumstances these beneficiaries used any illegitimate means or influence, or exercised their power and used their confidential relation, to bring about a disposition of the estate more favorable to themselves, and different from the intent and purpose of the executrix. I have so considered that subject and applied that rule.

And I have also kept fully in mind the fact of the impaired physical and mental condition of the testatrix, as disclosed by the evidence, and which is more specifically referred to and considered hereinafter, for in her condition she was much more susceptible to undue influence, deceit or fraud than when she was in the vigor of her womanhood.

And I have also remembered the well-founded proposition that it is rarely the case that direct evidence can be furnished that undue influence has been exercised over the mind of a testator in the making of a will, and yet that the circumstances attending the transaction may, however, be of such a character as to lead irresistibly to the conclusion that undue influence has been at work in its preparation and execution, and that the will is not the free and untrammeled act of the deceased.

But, notwithstanding that the case is one fully open and opportune to the action of these two legatees and devisees, if they saw fit to avail themselves of those advantages to secure these favorable bequests and devises of the testatrix, the answer to the claim of the contestants is, that there is no evidence of any act, word or movement of either to secure or obtain the making of this will at all, and especially not as to its provisions.

We now come to the consideration of the question of the capacity of the testatrix to make this will.

The general rule of law as to the sufficiency of the capacity to make a valid will, is simply whether a decedent has sufficient intelligence to comprehend the condition of his property, his relations to those who are or may be the objects of his bounty, and the scope and meaning of the provisions of his will, and if it is his free act, it will be sustained. *Horn* v. *Pullman,* 72 N. Y. 269; *Van Guysling* v. *Van Kuren,* 35 id. 70; *Cornwell* v. *Riker,* 2 Dem. 354; *Matter of Williams,* 19 N. Y. Supp. 780; *Matter of Will of Snelling,* 136 N. Y. 515. Upon the whole case the conviction has become to my mind that the testatrix had sufficient capacity to place her within the requirements of this rule, although the case is a marginal one.

24

The testatrix was a very old person, but no presumption of incapacity arises from old age alone. *Horn* v. *Pullman*, 72 N. Y. 269. " A man may freely make his testament, how old soever he may be; for it is not the integrity of his body, but of the mind that is requisite." *Cornwell* v. *Riker*, 2 Dem. 354–366, and the authorities there cited.

It is true that the evidence shows that the memory of the testatrix was impaired at the time of the making of this will. Many instances of her forgetfulness appear from the testimony. She would frequently hide or misplace articles of food, clothing and other things about her house, and be unable to state where the same were, or have any recollection as to the same.

She would at times fail to recollect or recognize acquaintances, and address persons whom she knew well by wrong names.

But failing memory does not *per se* establish want of capacity. *Matter of Stewart*, 13 N. Y. Supp. 219; *Delafield* v. *Parish*, 25 N. Y. 9.

There is evidence, also, of eccentricities and peculiarities in her actions, conduct and sayings. She had a child born in her early life, some thirty or forty years before her death, and which died while still in its early childhood. She seems to have been deeply attached to it, and manifested it by her conduct and speech, and even during these late years of her life, would frequently speak of him and compare him with young persons in a manner which was eccentric and peculiar.

She became less tidy in her dress and in conducting her household duties. She, in a measure, became incapable of doing her work in her usual manner, insomuch that relations, her sister, Mrs. Harris, and her husband, were engaged to assist her in her household work, and to, so far as necessary, care for her.

This commenced about the time of her husband's last illness and continued until Thanksgiving in 1886, when she was taken to the home of Mr. and Mrs. Blauvelt, with whom she made her home during the remainder of her life. The testa-

trix was, as she grew older, gradually losing her physical and mental powers.   But I do not think that she had reached that condition of mind that she was incapacitated from making this will, and it is her capacity at that time that must apply. She had entered upon and was passing through the period of senility, but had not then reached the condition that disqualified her from making her will.   Matters were apt to slip from her memory, but when the same came to her attention or thought, there is no real proof that she did not treat them and speak of them with reason and sense.   It was only after its dismissal that her weakness was shown by her failure to recollect.   It appears, however, that one brother was dead when she made the will, but his residence was in a distant state, and it might well be that she had not then learned of it.   There was no proof that she ever had.   She gave to the attorney who drew the will, and who became one of the subscribing witnesses thereto, the particulars for the provisions thereof. They appear to have been comprehensive.   She remembered all of her immediate relatives, being her brothers and sisters, for each one is mentioned in the will, and a bequest made to each.   She named the specific amounts to be given to each, and the residue to Abram Blauvelt.   The aggregate of the specific legacies of money is $9,500, which shows pretty clear comprehension of the testatrix of the amount of her estate that she had to dispose of.   She names each brother and sister. It seems to me, it being clear that no one but herself gave the directions for the provisions of the will, that she fairly comprehended and fully understood what she was doing.

On the occasion when she executed the will it was read to her, and she gave her assent that it was correct.   She then executed it, and with no one present having any interest in its provisions or her estate.

Her signature is remarkably well written for one of her age, and in itself bears evidence of good physical health, and also corroborates the claim of her sufficient mental capacity.

Then, in corroboration and confirmation of all that took place in the preparation of this will, and the execution of the

same, and to sustain its validity, it appears that the preparation and the charge of the execution of the same was put into the charge of one of the most experienced lawyers in such matters within the county, and of whose fairness and integrity none has the slightest suspicion.

He and his equally reliable son, also well experienced in such matters, testify as to the soundness of the mind and understanding of the testatrix at that time, and I am impressed that they would not have done so had there been any manifestation on the part of the executrix that indicated that she did not fairly comprehend and understand what she was doing.

The testamentary capacity is not, in the eye of the law, conditioned upon the possession of sound health, or of great intellectual vigor or activity. *Cornwell* v. *Riker*, 2 Dem. 367.

And incapacity to make a will cannot be inferred from an enfeebled condition of body or mind. *Horn* v. *Pullman*, 72 N. Y. 269.

Proof that a testator, though somewhat forgetful, was capable of appreciating the nature of his act and the proper objects of his bounty, of selecting the draftsman, and of designating without prompting by the one in whose favor he makes the will, was held sufficient to establish his capacity. *Matter of Stewart*, 13 N. Y. Supp. 219, citing *Delafield* v. *Parish*, 25 N. Y. 9; *In re Stewart's Will*, 15 N. Y. Supp. 601; *In re Will of Snelling*, 136 N. Y. 515.

Even entertaining a delusion in respect to an heir is not sufficient of itself to justify rejection of a will. *Matter of Fricke*, 19 N. Y. Supp. 315.

In *Matter of Phelps*, 19 Wkly. Dig. 293, it was held that the fact that a testator, instead of giving his property to his blood relations, bequeathed it to relatives of his wife, under the belief that the former were negligent of him and careless of his comfort, will not of itself, unaccompanied by fraud, coercion or undue influence, be sufficient to invalidate his will deliberately made when in full possession of his faculties. Where a testatrix was ninety years of age, and very weak

physically, but managed her affairs, and although there was testimony that her mind at times would wander, it was held that she had sufficient capacity. *In re Gray's Will,* 5 N. Y. Supp. 464.

The like rulings were made in *In re Bartholick's Will,* 5 N. Y. Supp. 842; *In re Darling,* 6 id. 191; *In re Bennett,* Id. 199; *In re Berrien's Will,* 5 id. 37; 12 id. 585. In the latter case Judge DANIELS wrote the opinion at General Term, and the case is very similar to this upon the facts. Testimony as to eccentric mental condition of the testator and defective memory held, under the circumstances, insufficient to justify setting aside a will disinheriting the heir of the testator. *Matter of Merriam,* 16 N. Y. Supp. 738.

Among the cases hereinbefore cited there are several very much in line with this upon the facts and circumstances, and the condition and conduct of the decedent and the decedent's physical and mental condition, and within the legal rules cited, the testamentary capacity of the decedent was held sufficient. *Horn* v. *Pullman,* 72 N. Y. 269; *Matter of Berrien's Will,* 5 N. Y. Supp. 37; *Van Guysliny* v. *Van Kuren,* 35 N. Y. 70.

The testatrix had entered upon the stage of her life known as senility, and her physical and mental powers were gradually failing and weakening, but it appears that she still retained the capacity when an ordinary business matter was present to her mind, to understand, consider and dispose of the same intelligently and knowingly.

It seems that she had sufficient memory to collect in her mind, without prompting, the particulars or elements of the business transacted, and to hold them in her mind a sufficient length of time to perceive, at least, their obvious relations to each other, and be able to form some rational judgment in relation to them. She, therefore, within the rule that a testator who has sufficient mental power to do these things, is, within the meaning and intent of the Statute of Wills, a person of sound mind and memory, and competent to dispose of his estate by will.

Let findings and a decree be submitted accordingly.