In the Matter of the Probate of the Will of JOHN OTIS, Deceased.

*(Surrogate's Court, Essex County, Filed November, 1892.)*

1. WILL—UNDUE INFLUENCE.

Undue influence, when relied upon to annul a testamentary provision, must be proved; it cannot be presumed. It need not necessarily be proved by direct evidence, but, if not, then such circumstances must be proved from which that conclusion logically and irresistibly follows.

2. SAME—TESTAMENTARY CAPACITY.

Incapacity to make a will cannot be inferred, alone, from advanced years, poor health or a weak mind.

Probate of will.

A. K. Dudley, for proponents; F. A. Smith, for contestants.

McLAUGHLIN, S.—John Otis died on the 10th of March, 1891, having on the 1st of April, the year previous, made and published his last will and testament, which is now offered for probate, and the validity of which is challenged by his son, John W. Otis, upon the ground, mainly, that it was obtained, and the execution thereof procured, by fraud, circumvention and undue influence brought to bear against and upon the testator by Sara D. Bruce, or some other person or persons unknown to the contestant, and also upon the further ground that the testator, at the time of the execution of the will, did not possess sufficient testamentary capacity to make a will. Other formal

objections were made to its probate, but upon the hearing the evidence was directed mainly, if not entirely, to the question of undue influence and want of capacity, and upon the argument the same course was adopted by the learned counsel for the contestant. The will was drawn at the house of the deceased, in Elizabethtown, by Milo C. Perry, an attorney of high standing and character. Mr. Perry was also one of the witnesses to the will. The day previous to its execution the testator sent for Mr. Perry, with whom, as we may infer from the evidence, he was on very friendly terms. Mr. Perry, in answer to the summons, went to the house of the deceased. They were closeted togther for some time, no other person being present, and the deceased then gave him "instructions as to how he wanted his will drawn." Mr. Perry, after receiving such instructions, repaired to his office, and prepared a draft of the will, and on the following day returned to the house of the deceased, with whom he was again closeted for some time, during which time the will was read to the deceased by Mr. Perry, and the deceased read it himself. The will was then signed by the deceased, and witnessed by Mr. Perry and one Wilbur H. Brownson. All of the statutory requirements as to the execution and publication of the will were closely followed and carefully observed. Therefore, the questions presented are, whether undue influence was used in procuring the testator to make the will, and also whether the testator had sufficient testamentary capacity to make a will.

The contestant's counsel very ingeniously and strenuously urged the argument that the testator, being aged and infirm, was unfairly, so far as the contestant was concerned, and improperly, influenced in making the will; but the position of the learned counsel in this respect is not at all sustained by the proof. He utterly failed to call the attention of the surrogate to any evidence which would justify such a conclusion. The court of last resort in this State has declared that, to avoid a will on the ground of undue influence, "it must be made to appear that it was obtained by means of influence amounting to moral coercion,

destroying free agency, or by importunity which could not be resisted, so that the testator was constrained to do that which was against his actual will, but which he was unable to refuse, or too weak to resist." Brick v. Brick, 66 N. Y. 144, 149. "It must not be the promptings of affection, the desire of gratifying the wishes of another, the ties of attachment arising from consanguinity, or the memory of kind acts and friendly offices, but a coercion produced by importunity, or by a silent, resistless power which the strong will often exercises over the weak and infirm, and which could not be resisted, so that the motive was tantamount to force or fear." Society v. Loveridge, 70 N. Y. 387, 394; Jarm. Wills, 36, 37; Gardner v. Gardner, 34 N. Y. 155. Undue influence, when relied upon to annul a testamentary disposition of property, is in one sense a fraud, and, as such, it must be proved. It cannot be presumed. It need not necessarily be proved by direct evidence, but, if not, then such circumstances, at least, must be proved from which that conclusion logically and irresistibly follows. Matter of Smith, 95 N. Y. 516; Seguine v. Seguine, 4 Abb. Ct. App. Dec. 191. Applying to this case the rule laid down in the authorities above referred to, there is, as it seems to me, a total failure of proof showing, or tending to show, undue influence upon the testator. The will, then, must be admitted to probate, unless the evidence shows that the testator did not at the time possess sufficient testamentary capacity to make a will. What evidence is there from which the conclusion could be reached that he did not possess that capacity? After the most careful consideration I have failed to discover any.

There is no standard of mental capacity which it is necessary for a person to possess to enable him to make a disposition of his property by will. All that is required is that the testator have sufficient intelligence and mental power to understand what he is doing, and the legal effect of the instrument he is making. If he possess such intelligence, he may bestow his bounty as he likes, even if the disposition he makes of his property may appear, and in fact be, unjust and inequitable. The law gives

to every person in other respects competent to make a will the right to make whatever disposition of his property he chooses, however absurd or unjust. It is true that the testator was at the time seventy-eight years of age, but there is no presumption against his capacity to make a will because at the time it was executed he was advanced in years. Indeed, incapacity to make a will cannot be inferred, alone, from advanced years, poor health or a weak mind. Horn v. Pullman, 72 N. Y. 269; *In re* Gray's Will, 5 N. Y. Supp. 464, 24 St. Rep. 345. But, notwithstanding the age of the deceased at the time of the execution of the will, he possessed his usual intelligence and mental powers. The evidence, including the will, shows that he comprehended fully the situation. He sought by his will to provide for the support of his aged wife, giving her for that purpose, if need be, his entire property, in value about $1,000, and if, after her death, anything was left, it passed to the unmarried daughters. The will does not seem to be unjust, unnatural, or, under the circumstances, even inequitable. Several motions were made by the proponents, at the close of the evidence, to strike out certain testimony, which motions were reserved by consent until the final disposition of the case, but the foregoing views render it unnecessary to pass upon the several motions reserved, for the reason that, admitting all of the testimony offered, I think the will should be admitted to probate, and an order can be entered to that effect.